### LARSON v. SALT LAKE CITY et al.

No. 1944.   Decided September 12, 1908 (97 Pac. 483).

1. COURTS—SOURCE OF JUDICIAL AUTHORITY.   The power of the courts of the state is derived from the Constitution and laws of the state and from the common law, so far as not repugnant to the federal and state Constitutions and laws; and, where the power of a court is invoked, it is essential to point to some constitutional provision or legislative enactment or the common law authorizing it, either expressly or by necessary inference from the nature and Constitution of the tribunal itself.

2. DISCOVERY—PHYSICAL EXAMINATION—COMMON-LAW POWER.   At common law no power existed to compel one suing for a personal injury to submit to a physical examination by a physician appointed by the court.

3. COURTS—PRECEDENTS.   The power exercised by a court of equity in bills of discovery is not a precedent for the exercise of the same power by a court of law.

4. DISCOVERY—EQUITABLE REMEDY.   Because the courts at common law allowed parties to conceal from each other up to the time of trial the evidence on which they meant to rely, and would not compel either of them to supply the other with any evidence, the equitable remedy of bills for discovery to assist the prosecution or defense of an action pending in a court at law arose.

5. SAME—STATUTORY AUTHORITY.   In the absence of a statute authorizing it, common-law courts are without power to compel the inspection or production of books and papers out of court,

or the inspection of a document not pleaded, and not held in trust for the moving party, or the examination or survey of property, or to compel a party before trial to appear before a commissioner appointed by the court and answer pertinent interrogatories propounded to him concerning any material issue in the case.

6. SAME. The fact that a party having peculiar knowledge of a matter fails to bring it forward does not furnish any basis for the court to make an order requiring such party to divulge his knowledge before trial to the adverse party, or to supply him with the means of obtaining it.

7. SAME—PHYSICAL EXAMINATION—POWER OF COURT. In the absence of a statute authorizing it, a court at law has no power to compel one suing for a personal injury to submit to a physical examination by a physician appointed by the court.

APPEAL from District Court, Third District; T. D. Lewis, Judge.

Action by Jennie Larson against Salt Lake City and others. From a judgment of dismissal, plaintiff appeals.

REVERSED AND REMANDED.

*G. M. Sullivan, W. A. Lee,* and *A. T. Sanford* for appellant.

*Young & Snow* and *H. J. Dinniny* for respondents.

STRAUP, J.

Plaintiff brought this action to recover damages for personal injuries alleged to have been sustained by her by the negligence of the defendants. It was alleged in the complaint that, by reason of the negligent acts, the plaintiff "was rendered unconscious, her left leg and ankle badly bruised and injured, her back, spine, and nervous system disordered, her face and nose scarred and disfigured, and that she was otherwise made sick, sore, and lame; that she was confined to her bed for many weeks, and required the services of a physician and surgeon; and that her injuries were permanent and lasting." The defendants filed general denials. Before trial, one of the defendants, the Big

Four Advertising Company, applied to the court for an order requiring the plaintiff to submit to an examination by a competent physician, and surgeon to be appointed by the court, in order that the character and extent of plaintiff's injuries, and whether her disabilities, if any, were due to the causes set forth in the complaint, might be ascertained and determined. The name of such a physican was suggested and his appointment requested by the defendant. The plaintiff objected to the granting of the order, on the grounds, principally, that the court was without authority to make or enforce the order, and that the physician suggested by the defendant was prejudiced and biased. In ruling on the objection, the court observed that both the plaintiff and the defendant had the right to select their own witnesses; that the plaintiff had the right to select a physician of her choice, and the same privilege ought to be extended to the defendant, unless the reputation of the physician was such that he ought not to be selected. The court, however, required a showing to be made as to the necessity for the examination, which showing was to the effect that the defendant applying for the order had no information, except as was alleged in the complaint, concerning the character or extent of the alleged injuries. Thereupon the court made an order requiring the plaintiff, at a time specified, and at her home, or at some place to be designated by her, to submit to an examination to be made by the physician and surgeon suggested by the defendant, the plaintiff's physician and attorneys, if she desired them, to be present at such examination. The plaintiff refused to comply with the order, whereupon the court, at a subsequent time, dismissed the case. Judgment was entered accordingly, from which this appeal is prosecuted by the plaintiff.

The questions presented, therefore, are whether the court had the power to make the order, and whether it was authorized to dismiss the case on plaintiff's refusal to comply with it. Upon these questions the authorities are in hopeless conflict. They are collected and referred to in note to section 4, p. 1022, 5 Current Law, 64 Cent. Law Journal, p.

428, 14 Cyc. 364, and in the case of *May v. North Pac. Ry. Co.*, 32 Mont. 522, 81 Pac. 328, 70 L. R. A. 111, where the power to make the order was denied; and in the cases of *City of South Bend v. Turner*, 156 Ind. 418, 60 N. E. 271, 54 L. R. A. 396, 83 Am. St. Rep. 200, and *Johnson v. So. Pac. Co.*, 150 Cal. 535, 89 Pac. 348, where the power was asserted. Upon noting and reviewing the cases from the different jurisdictions in Current Law, *supra,* it is said:

"If the last announcements of these several courts may be taken to indicate the law in their respective states, a review of the decisions discloses that the power of trial courts, to compel such examination is asserted in Alabama, Arkansas, Georgia, Iowa, Indiana, Kansas, Kentucky, Michigan, Minnesota, Missouri, North Dakota, Ohio, Pennsylvania, Washington, and Wisconsin, and denied in the federal and territorial courts and in Illinois, Massachusetts, and Texas, and was denied in New York until specifically granted by direct legislative enactment. The bare assertion that trial courts possess this power, in the absence of any legislation, and without common-law precedents, has led to the greatest possible confusion among the decisions of the very courts asserting it. (1) What is the source of the power? (2) To what extent may it be carried? (3) May the defendant demand the order as a matter of right? And (4) how will the court enforce obedience to its order? Singularly enough the first of these questions appears to have received little or no consideration."

The courts asserting the power have quite generally held that the defendant has not the absolute right to the order, but that the motion therefor is addressed to the sound discretion of the court, and that the application should be made before entering upon the trial; that the defendant has not the right to designate the physician by whom the examination is to be made, but that the examination should be ordered, and conducted under the direction of the court whenever it fairly appears that important facts concerning the injury are only to be disclosed by such an examination, and that it may be made without injury to plaintiff's health, or the infliction of serious pain, or indignity to, or an unreasonable or indecent exposure of, his person; and that while the court has no right, in the enforcement of the or-

34 Utah—21

der, to compel the plaintiff to actually submit to the examination, the court may nevertheless, upon plaintiff's refusal to do so, dismiss the case or delay the proceeding until he complies with the order, or the court may decline to permit any evidence to be given to establish the injury. A few courts have held that, on plaintiff's refusal to comply with the order, the court may punish him as for a contempt.

In many cases where courts have asserted the power it will be seen, as has been suggested, the existence of the power was either assumed or merely asserted. In others the courts, instead of discussing the source of the power, or undertaking to state by what authority such a power is exercised, have undertaken to give reasons why trial courts ought to have such a power, and why it ought to be exercised by them. The same thing is true of some text-writers. Thus, in section 859 of Thompson on Trials, the author says:

"In modern trials of civil actions for physical injuries, the question has frequently arisen whether the court has power to order an inspection of the body of the plaintiff or person injured for the purpose of ascertaining the nature and extent of the injuries. Some of the courts, carrying in their minds no higher conception of a judicial trial than the conception that it is a combat in which each of the gladiators is permitted, within certain limits, to deceive and trick the antagonist and the umpire, have denied the right of the defendant to have an order for such inspection. Other courts, taking the more enlightened view that the object of a judicial trial is to enable the state to establish and enforce justice between party and party, have held that it is within the power of the trial court, in the exercise of sound discretion, in proper cases, upon an application seasonably made, under proper safeguards designed to preserve the rights of both parties, to order such an inspection and to compel the plaintiff or injured person to submit to it."

The same thought is expressed in less intemperate language in the case of *South Bend v. Turner, supra,* where it is said:

"Courts are instituted by the state to administer impartial justice to contending parties. In such contests it is the duty of the court to bestow upon the litigants equal and exact justice. This cannot be done without the court first obtaining the exact and full

truth concerning the matters in controversy. Hence from this duty of the court to dispense exact justice is essentially implied all the power necessary to its performance, which includes the power to make subservient to its order all persons and things that will afford the most reliable evidence."

On page 3020, 3 Wigmore on Evidence, it is said:

"There is and will be no end to the variety of frauds invented; and it will be an ill day for justice when the courts cease to meet new frauds by new applications of old remedies. Quite apart from the general impolicy of granting to a party the license to conceal truth by any form of refusal, there is in this class of cases the added consideration that corporal injuries are today notoriously a subject of frequent fraud and misrepresentation; so that the privilege to withhold the exhibition of the alleged injury may amount in such cases to nothing less than a judicial license of fraud."

In the case *Wanek v. City of Winona,* 78 Minn. 98, 80 N. W. 851, 46 L. R. A. 448, 79 Am. St. 354, the court observes:

"To allow the plaintiff in such cases, if he sees fit to display his injuries to the jury, to call in as many friendly physicians as he pleases, and have them examine his person, and then produce them as expert witnesses on the trial, but at the same time deny to the defendant the right in any case to have a physical examination of plaintiff's person, and leave him wholly at the mercy of such witnesses as the plaintiff sees fit to call, constitutes a denial of justice, too great in our judgment to be tolerated for one moment."

And in other cases language may be found similar to that expressed by Mr. Justice Beck in the case of *Schroeder v. Railway Co.,* 47 Iowa 375, and in the dissenting opinion of Mr. Justice Brewer in the case of *Railway Co. v. Botsford,* 141 U. S. 258, 11 Sup. Ct. 1003, 35 L. Ed. 734, to the effect that every party "has a right to demand the administration of exact justice;" that, "if truth be hidden, injustice will be done;" that "the end of litigation is justice, and knowledge of truth is essential thereto;" and that, since the plaintiff may make any, not indecent, exposure of his person in the courtroom in the presence of the jury to show the extent of his injuries, and may call his personal friends and his own

physicians into a room and there permit them a full examination of his person in order that they may testify as to what they see and find, to deny the defendant the right to make a similar examination permits the plaintiff to disclose the real facts to the jury, if his interests require, and to withhold such a disclosure if it is against his interest.

These may all be cogent reasons and appropriate addresses to be considered by legislative bodies why courts ought to have such a power, and why it ought to be exercised by them; but they are very far from pointing out anything which in any wise tends to show from what source such a power is derived, or by what authority it may be lawfully exercised. It is readily conceded that the "end of litigation is justice, and that knowledge of the truth is essential thereto," and that courts are organized "to establish and enforce equal and exact justice" between the litigants. Such plastic phrases and pointless truisms, however, do not argue anything nor elucidate or answer the point of inquiry. To say that the action of courts may be invoked when, in their discretion, the exercise of a power will promote justice, is to say that courts are self-constituting and their power self-creating. No one would seriously contend that courts generally have the power to make and enforce orders which in their discretion will bestow equal and exact justice. The power of courts is not measured by so flexible a yardstick. There are many things over which it may be expedient on the part of courts to exercise a discretionary power, but concerning which courts have constantly refused to act because of a want of power. Courts are creatures of the law. The power of state courts is generally derived from Constitutions and laws of the state. The power of our courts is derived from the Constitution and the laws of this state, and the common law so far as it is not repugnant to, or in conflict with, the Constitution and laws of the United States and the Constitution and laws of this state. Whenever the power of a court is invoked, in order that it may be lawfully exercised, it is essential to point to some constitutional provision or some legislative enactment or the common law authorizing it—not

necessarily to some express provision or enactment, but to some provision where the right to exercise the power invoked is fairly implied, or where it may be necessarily inferred from the nature and constitution of the tribunal itself. It is conceded that there is no constitutional provision, nor legislative enactment, giving the court power to make the order in question. The ruling of the court is not, nor can it be, defended on any such ground. It is also conceded, and it has been many times declared by the courts asserting the power, as well as by the courts denying it, that there is no common-law precedent where such action of the court was ever exercised by law courts. That no such power was possessed or exercised by the courts of common law is well pointed out by Mr. Justice Holloway in the case of *May v. Northern Pac. Ry. Co., supra,* and by Mr. Justice Gray in the case of *Railway Co. v. Botsford, supra,* and reaffirmed by Mr. Justice Peckham in the case of *Camden & Suburban Ry. Co. v. Stetson,* 177 U. S. 172, 20 Sup. Ct. 617, 44 L. Ed. 721, where in the case last named it is said: "It is settled in this court that no power to make such an order exists at common law; in other words, the court has no inherent power to make it." True, some courts have said that the exercise of the power is analogous to that exercised by courts in bills for discovery. But bills for discovery were brought in equity for the discovery of facts resting in the knowledge of the opposite party, or of deeds, writings or other things in his custody or power, seeking no relief in consequence of the discovery, but seeking discovery merely to enable the party asking it to prosecute or defend an action at law in another court arising out of contract or out of torts to property. The authorities are in conflict as to whether a bill of discovery, in the absence of a statute, will lie in aid of actions based on purely personal torts. (6 Pl. & Pr. 733.) By an early English decision (*Glynn v. Houston,* 1 Keen 329), and in *Robinson v. Craig,* 16 Ala. 50, it was held that the bill would not lie in aid of such actions. In a recent decision (*Reynolds v. Burgess Sulphite Fibre Co.,* 71 N. H. 332, 51 Atl. 1075, 57 L. R. A. 949, 93 Am. St. 535), where the English and

American cases are reviewed, it was held that the bill would
lie in aid of such actions as well as actions of torts to prop-
erty. To what extent the decision was influenced by statute
need not now be considered, for, conceding that the bill, in
the absence of a statute, would lie in aid of an action based
on purely a personal tort, it nevertheless must also be con-
ceded that law courts had not the authority to exercise the
power of discovery in the law action, or in any proceeding
supplemental thereto, but to authorize the exercise of the
power it was essential to seek relief in a court of equity. Be-
cause it was necessary to resort to equity to exercise the
power, conclusively demonstrates that such a power was not
possessed by the law courts. A power exercised by a court
of equity is not a precedent for the exercise of the same power
by a court of law. Says Mr. Best, in his work on Evidence
(International Ed. 1893-94), section 624:

"The common law laid down as a maxim, 'Nemo tenetur armore
adversarium suum contra se,' and, in furtherance of this principle,
it generally allowed litigant parties to conceal from each other, up
to the time of trial, the evidence on which they meant to rely, and
would not compel either of them to supply the other with any evi-
dence, parol or otherwise, to assist him in the conduct of his
cause."

See, also, 2 Elliott on Ev., section 1385, where the same
principle is stated. Hence there arose the equitable remedy
of bills for discovery to assist the prosecution or defense of
an action pending in the law court. Such remedy being some-
what circuitous and expensive, the Legislature by 14 & 15
Vict., c. 99, section 6, and by subsequent common-law pro-
cedure acts, empowered the superior and other courts of
common law, on application made for such purpose by either
party in any pending action, to order the inspection and pro-
duction of any document or writing, or in the inspection and
examination of real or personal property, in the custody or
under the control of the opposite party. And it is generally
conceded that, in the absence of some legislative enactment,
common-law courts were without power to compel the inspec-
tion or production of books and papers out of court, or the

inspection of a document not counted or pleaded on, and not held in trust for the moving party, or the examination or survey of property. It is only in virtue of statutes that law courts now possess and exercise such powers. Such a power has been expressly conferred upon our courts by the laws of this state. The Legislature has provided in what manner books, papers, documents, and other things may be inspected and producd, property examined and surveyed, property and premises viewed by the jury, oral examinations or interrogations of a party in action or proceeding may be had before trial, and has otherwise promulgated and established general principles and rules of evidence and means of its production in judicial investigations. It is not claimed that these enactments authorized the court to make the order, or that the order was made in virtue of them.

There can be no doubt that, in the absence of a statute, a law court is not authorized to compel the plaintiff, before trial, to appear before a notary public, or a commissioner appointed by the court, and there make answer to pertinent interrogatories propounded to him concerning his injuries, or concerning any other material issue in the case. If a statute is necessary to confer such a power upon the court, we do not see from what source it obtains the power to compel the plaintiff before trial to submit his person to a physical examination, and make answers to proper questions propounded to him by the physican making the examination. Or, if a statute is necessary to authorize a court to order an inspection and examination of property before trial, we see no good reason why a statute is not likewise necessary to authorize the court to compel a plaintiff in a personal injury case to submit his person before trial to a physical examination. To say that the court has such a power in order to give the parties equal means to obtain information concerning the injury, and to afford them equal opportunity to lay before the jury the real facts, and to prevent fraud, and to promote justice, is merely asserting reasons why courts ought to have such a power. Such kind of argument could as appropriately have been made when, in the absence of statutes, the power of the

court was invoked for the inspection and production of a paper or document which was in the possession and under the control of one of the parties, and which was secretly withheld by him, or for the inspection and examination of property. It may be that in some instances the plaintiff may have better means than has the defendant of ascertaining and producing the facts concerning the character and extent of the injuries. In other instances the defendant may have better means than the plaintiff of ascertaining and producing the facts concerning the alleged acts of negligence. It is not infrequent, in all kinds of suits, that particular facts in issue are peculiarly within the knowledge of one of the parties, or that one has better means than the other of ascertaining and producing the facts. The fact that a party having peculiar knowledge of a matter fails to bring it forward may raise a presumption or justify an inference in favor of his adversary's claim; or, if he withholds certain evidence with respect thereto, the inference may be justified that, if it had been produced, it would have been unfavorable to his cause, but it furnishes no basis authorizing the court to make an order requiring him to divulge his knowledge before trial to his adversary, or to supply him with the means of obtaining it. In the case of *Reynolds v. Burgess Sulphite Fibre Co., supra,* the doctrine was recognized that the defendant in an action at law to recover for a death caused by its alleged negligence could not be compelled to allow the plaintiff to inspect the broken parts of machinery, defects in which were alleged to have caused the death, but a bill of discovery was filed to obtain inspection of the fragments of machinery to aid the action pending in the law court. It might as well be said that the court, in the absence of a statute as well, had the power to compel the defendant to allow plaintiff before trial to inspect his private records and documents, if relevant to the issue, or to examine machinery and devices in his possession and under his control, defects in which are alleged to have caused plaintiff's injuries, as the power to compel plaintiff, in the absence of some statute authorizing it, to submit his person before trial to an examination on behalf of the defend-

ant in order that he may ascertain the extent and character of the injuries and qualify witnesses to testify concerning them. The very courts which, in the absence of a statute, assert the existence of the power to compel the plaintiff to submit to such an examination, assert, with equal emphasis, that an order of court that a veterinary surgeon may be sent on the premises of a party against his will to examine a horse whose condition was in dispute in an action brought to recover damages for breach of warranty in the sale of the horse, provided the owner or any person he might select would accompany such surgeon, was in excess of the power of the court. Says the learned court:

"The mare in question was in possession of the plaintiff and upon his premises. The order compelled the plaintiff to permit the parties to enter upon his premises to make the examination, and by a party whom the plaintiff objected to as coming there. The court had no power to compel the plaintiff to submit to such an invasion of his premises. If the plaintiff refused to let the mare be examined at that time, or to have his premises visited for that purpose, it was his right." (*Martin v. Elliott*, 105 Mich. 130, 63 N. W. 998, 31 L. R. A. 169.)

Why not here invoke the oft-repeated judicial pronouncements that the "end of litigation is justice," and that "courts are organized to enforce equal and exact justice between the parties," that to permit the physical examination of the mare to be made by veterinary surgeons selected by plaintiff and to leave the defendant "wholly at the mercy of such witnesses as the plaintiff sees fit to call constitutes a denial of justice too gross to be tolerated for one moment?" Why, in such instance, assert that compelling the plaintiff to allow a veterinary surgeon to enter his premises to make a physical examination of his horse was an unauthorized invasion of his rights, but to compel a plaintiff, especially a woman, to allow a physician and a stranger, against her will, to enter her home and there compel her to lay bare her body and submit it to his touch, and, if on her refusal to submit to such compulsory stripping and exposure, the doors of the courts shall be closed to her, is not also an unauthorized invasion of rights.

It might be considered a more advanced system of jurisprudence if, in judicial investigations, each litigant were required, before trial, not only to lay bare his respective claims and defenses, but also the particular kind of evidence by which it would be sought to support them, and to place each other in the same position with respect to ascertaining and producing evidence, not only as to a particular issue in a particular class of cases, but as to all material issues in all cases. But such a system does not now exist, nor has it ever existed. Litigants come before the court, not as ''friends at court'' who have, in advance of the trial, revealed to each other all the evidence possessed by them and the source and means of obtaining and producing it, but they come as opposing suitors where neither is bound to arm his adversary against himself nor furnish him with an instrument to enable him to maintain or defend his cause; not as ''belligerent combatants,'' but as legal adversaries asserting and demanding rights, and seeking to have them vindicated and defended in accordance with law and the prescribed rules and principles which have been established for the orderly conduct of judicial investigations. Experience has demonstrated that truth will be better disclosed, and justice more evenly administered, by courts confining their powers within the bounds of prescribed authority, and by adopting the prescribed manner of presenting evidence, and following the well-established rules and principles affecting judicial investigations, than by assuming supposed inherent powers from mere judicial pronouncements to go forth in search of truth and to do equal and exact justice, or by conducting judicial investigations in such manner as the court may consider in its discretion will best disclose truth and promote justice. The one leads to an orderly and proper administration of justice; the other to disorder and confusion. It is further said by Mr. Justice Brewer in his dissenting opinion in the Botsford Case, and repeated by other courts, that

"It seems strange that a plaintiff may, in the presence of the jury, be permitted to roll up his sleeve and disclose on his arm a wound of which he testifies; but, when he testifies as to the existence of such a wound, the court, though persuaded that he is perjuring himself, cannot require him to roll up his sleeve, and thus make manifest the truth, nor require him in the like interest of truth to step into an adjoining room, and lay bare his arm to the inspection of surgeons."

In the first place, the expression was not pertinent to the question then before the court. Furthermore, the power of the court to compel the plaintiff, in advance of the trial, to submit to a physical examination, in order that the defendant may ascertain the extent and character of the injuries and thus qualify witnesses who may testify concerning them, is one thing. The power of the court, when the plaintiff has testified concerning his injuries, to compel him to exhibit the injured parts to the jury, when to do so does not involve an indecent exposure, is quite another and different thing. While such a question is not now before us, inasmuch as courts have given such instance as a reason why the power of the court in question ought to be exercised, it may not be out of place to briefly notice it. If, in the case supposed, a plaintiff testifies concerning a wound on his arm, he may, in corroboration of his testimony, exhibit the wound to the jury. He may likewise be required to do so, at the request of the defendant, as a part of the cross-examination and as affecting plaintiff's testimony. Though the plaintiff does not take the stand, but evidence has been given on his behalf concerning his injuries, he may nevertheless be called by either party and required in a proper case to exhibit the injured parts as corroborating or affecting the testimony which has been given concerning the injuries. It may be asked why has not the court power to compel a physical examination in advance of the trial, but has the power to compel the plaintiff to exhibit his wounds and injuries to the jury at the trial? The answer is simple. It is for the same reason that courts of law could not compel the inspection or production of private papers or documents in the possession or under the control of a litigant, but, if he came into court with the docu-

ment or paper about him, the court could compel him to produce it. In the one instance the power to compel one suitor before trial to arm his adversary against himself or to furnish him evidence to enable him to maintain or defend his cause was not recognized; in the other, the right of each suitor was recognized to call any person possessed of facts as a witness, and to interrogate him concerning them. The plaintiff may be a witness in his own behalf. He may also be called as a witness on behalf of the defendant. He may be interrogated by either party concerning any fact within his knowledge. If he testifies concerning his injuries and is asked by either party to exhibit the injured parts to the jury, he, when the disclosure does not involve an indecent exposure, may not, any more than a witness on the stand who has been ordered by the court to produce a document in his pocket, decline to do so. The power which a court has to compel a witness to answer all proper questions propounded to him may also be exercised to compel the plaintiff to exhibit the wound or injury of which he testifies for the purpose of affecting his testimony. But to say that the plaintiff shall submit his person to a physical examination, in advance of the trial, in order that those examining him may become qualified as witnesses and put in possession of facts theretofore unknown to them, is quite another and different thing.

In discussing the question whether there is authority for a law court to compel one litigant to furnish the means by which the other may procure evidence, except as has been provided by statute, the court in the case of *May v. N. P. Ry., supra,* well said:

"The plaintiff may be compelled to go upon the witness stand and answer all proper questions put to him, or to produce books and papers in his control, or permit the examination of property in his possession, and, so far as the defendant may reap any benefit therefrom, it may be said that the plaintiff is compelled to produce evidence for his adversary; but further than this there is no warrant in the law for our courts proceeding. From the authority directly conferred upon the district courts of this state, there cannot be implied this extraordinary power. There is no grant of power from which it could be implied.

However, the assertion of the power by certain courts is no more extraordinary than the remedy proposed for violation of the order. To say that a court can make an order, but cannot enforce it, is remarkable, to say the least. To say that a court may refuse to permit a witness to testify or dismiss his action if he refuse to comply with the order is a doctrine which we cannot approve. Except in particular instances where the authority is directly conferred (and the present case does not present one of them), our courts have no authority to refuse to permit the plaintiff to testify or to dismiss his action. For a trial court of this state to make an order of this character and prescribe dismissal of the action as a penalty for noncompliance would amount to a clear usurpation of authority in each instance. The order would be made without authority, and, in case of disobedience, the penalty inflicted without sanction of the law. The arguments advanced in favor of the assertion of this power might with propriety be addressed to a legislative assembly, but not to the courts, and we decline to resolve this court into a law-making body, even though it may be considered by text-writers more enlightened to do so. We prefer to follow the doctrine announced by the Supreme Court of Massachusetts—that it is a matter for legislative control, and, in the absence of legislation, the courts ought not to usurp the authority."

We are of the opinion that the court was not authorized to make the order, nor to dismiss the action because of plaintiff's refusal to comply with it. The judgment of the court below is therefore reversed, and the cause remanded to the trial court, with direction to reinstate it. Costs to appellant.

McCARTY, C. J., concurs.

FRICK, J. (concurring.)

I fully concur with Mr. Justice Straup in his statements of the law as contained in the opinion written by him, and in the conclusions there reached. I must confess, however, that I have been compelled to change my views with regard to the power of courts to require a plaintiff who seeks redress for personal injuries to submit to a physical examination of his body before trial with a view of ascertaining the character, extent, and effect of his injuries. After a careful reading of the cases, and upon due consideration of the legal principle involved, I am convinced that the courts, in the absence

of an express statute conferring it, have no such power. That
such a power is necessary, and that injustice may, in certain
cases, result because the courts are powerless to enforce it,
is conceded.    That such injustice may arise both through de-
sign and through ignorance of the injured party concerning
the character, extent, and effect of his injuries is likewise ad-
mitted.    But all this simply points to some good reasons why
the power should exist, and is no proof whatever that it in
fact does exist in the courts.    Courts, no doubt, are the in-
struments through which the sovereign state seeks to impart
and enforce equal and exact justice to all suitors as nearly
as this may be done by human instrumentalities.    As a
means to this end courts are clothed with what are usually
termed inherent powers, as well as with those that are ex-
pressly conferred.    Those so-called inherent powers, how-
ever, cannot, in administering justice, be extended beyond
what may be necessary to carry into full effect the jurisdic-
tional powers of the courts, and which, by reason of the gen-
eral scope and character of such power, cannot always be defi-
nitely stated.    If, therefore, a general power is conferred, it
may be said that a court has also the inherent or implied
power to make the general power effective in so far as this may
be necessary in the administration of justice; and it may also,
through such inherent power, defend and protect its own
dignity, correct those who abuse its processes, and punish as
for a contempt any interference with what is termed the due
and orderly course of justice.    As has been well said, a court
is "a tribunal empowered to hear and determine issues be-
tween parties, upon pleadings, either oral or written, and
upon evidence to be adduced under well-defined and estab-
lished rules according to settled principles of law." (11
Cyc. 655.)    It is therefore not true that a court has the in-
herent power to compel a party to comply with all orders that
the court may deem essential to bring about full and complete
justice between the parties in a particular action.    Unless
such orders are sanctioned by some law, the court is power-
less to enforce them.    To say that a court has the inherent
power to make and enforce all orders that it may deem neces-

sary to administer justice would, in the end, lead to much greater injustice than such a rule could possibly prevent. To establish such a rule would leave the whole matter to the individual judgment of every court to say whether a particular order desired is essential or nonessential to the administration of equal and exact justice between the parties before the court. Under such an expansive rule, no one could say one day what would be required of him the next. When the proposition is put in this form, there are perhaps few, if any, courts that would defend it. Yet, when they are called upon to apply the matter concretely, courts are led away from correct principles by the seductive claim that every court possesses the inherent power to require either party to submit to such orders as may be deemed necessary to the due administration of justice between them. In connection with this argument, it is asserted that it is to obtain justice that the parties invoke the power of the court, and, if either one or both may in any way impede its attainment through the court, then a court is not what it is designed to be, but becomes a mere instrument in the hands of the one or the other to defeat rather than to attain full and complete justice. These arguments no doubt would be both sound and convincing if it were not for the fact that courts are but the creatures of the law, and, as such, must find authority for their orders and judgments in some law wherein it is either expressed or necessarily implied.

In requiring a party to submit to a physical examination before trial, to ascertain some fact or facts not then known to the adverse party, and which are deemed material to enlighten either the court or jury, the court does not exercise one of its inherent powers. It exercises a power purely legislative, in that it pertains to the manner of procuring and preserving evidence to be adduced at the trial of some issue. In what way the evidence is to be obtained before trial, and how it shall be preserved so as to be used at the trial, is not a judicial, but a legislative, function. The court may call attention to defects in the law in this regard, but it cannot supply them by judicial legislation. To do this is but a plain

usurpation of power. The mere fact that the necessity for the exercise of the power is great, even palpable, is wholly insufficient to authorize a court to resort to it under the broad claim that it has the inherent power to administer equal and exact justice to all alike. Nor is the exercise of the power justified upon the ground that many other courts have and are exercising it under a claim of right. Usurpation is none the less so because it is frequently practiced. It is quite true that judicial error is often recognized as law, binding upon all until overruled by the court, or until it is superseded by legislative enactment. Further, a repetition of a usurpation of power is as great a wrong as when it was first resorted to, and neither the necessity for its exercise nor the plea that it is in the interest of justice can ever become a valid excuse for those who usurp the power. A careful reading of the text-books and the many cases cited by Mr. Justice Straup which assert the power will disclose that neither the text-writers nor the courts point to the source of the power, but they simply assume it to exist, because, as it is said, the exercise of it is essential in the administration of justice. The cases further disclose that the courts which assert the power are at great variance in applying it. Some enforce it in one way, while others do so in another; but the great majority of the courts agree that a failure to comply with the order of the court for a physical examination before trial cannot be punished as a contempt of court, but must be dealt with in some other way. If it be true that the court has the power to make such an order, it must necessarily follow that a willful disobedience of it can be nothing but a contempt of court and should be punished accordingly. Nothing short of such a punishment will either comport with or maintain the dignity of the court making it. It is manifest that the courts are much more willing to assert and declare the power than they are to maintain and enforce it. If the power exists, it should not be dallied with, but should be rigorously enforced. If it is essential in the administration of justice and exists, there is—there can be—no excuse for its nonenforcement by the only prompt method known to the courts in vindicating

their orders, namely, punishment as for a contempt. The diversity of opinion with regard to how, when, and in what manner such orders shall be made and enforced, seems to me to be strong inherent proof that, while many courts assert the power, they entertain serious doubts with regard to its existence, and hence hesitate to pursue it to its logical results. Moreover, this diversity of opinion is a very strong reason why the Legislature should confer the power, and with it prescribe some rule as to when, how, and in what manner it shall be applied and enforced. Quite true, if the power is once given, the right to enforce it will be implied; but it certainly would be much better if the Legislature, which alone can grant it, would also define its scope and prescribe the manner of its enforcement.

I am firmly convinced that the courts have no inherent power to order a physical examination before trial, and hence are powerless to impose any conditions upon the plaintiff in case he fails to comply with such order. The action of the trial court in dismissing the action, being based on an order it had no power to make or enforce, cannot be sustained.