Appeal from Second District.

## SHARP v. OGDEN RAPID TRANSIT CO.

No. 2917.   Decided October 2, 1916.   (160 Pac. 438.)

1. APPEAL AND ERROR—HARMLESS ERROR—EXCLUSION OF EVIDENCE. In a passenger's action against a street railroad for personal injury, where a witness for the plaintiff described her conduct both in her testimony in chief and upon cross-examination, error, if any, in excluding a question as to whether the witness noticed anything in plaintiff's condition that indicated that she was hurt, calling for a conclusion, was not prejudicial, where the defendant developed all that the witness heard and observed concerning the plaintiff. (Page 484.)

2. APPEAL AND ERROR—HARMLESS ERROR—EXCLUSION OF EVIDENCE—EVIDENCE AFTERWARDS ADMITTED. Error, if any, in excluding the statement of the conductor, who had observed plaintiff, that the morning after she seemed to be cheerful and she and others went along, not noticing that there was anything wrong with plaintiff, was harmless, where the defendant was permitted to fully develop all that the witness observed concerning plaintiff and her acts and conduct. (Page 485.)

3. EVIDENCE—OPINION EVIDENCE—EXPERT—CONSEQUENCE OF INJURY. In an action for injury to a girl of about seventeen, while a passenger on defendant's car, where her injuries consisted of bruises visible only on the surface of the body, that after the accident she became an invalid, and that her menstruation became irregular, physicians called as experts were properly permitted to state their opinion that the injury suffered could and probably did produce such ailments, and in such case the ultimate question whether the injury was the proximate cause of such ailment was for the jury. (Page 485.)

4. DAMAGES—PHYSICAL EXAMINATION—POWER OF COURT. In a passenger's action for injury, where it appeared that most of her symptoms were subjective, the court, after the plaintiff had rested, had no power to order a physical examination by physicians selected by defendant, in the presence of plaintiff's physician and father.[1]   (Page 486.)

Appeal from District Court, Second District; *Hon. N. J. Harris*, Judge.

[1] *Larson* v. *Salt Lake City*, 34 Utah 318, 97 Pac. 483, 23 L. R. A. (N. S.) 462.

Action by Ethel Sharp, a minor, by Milo R. Sharp, as guardian ad litem, against the Ogden Rapid Transit Company.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Boyd, De Vine & Eccles,* for appellant.

*John G. Willis,* for respondent.

FRICK, J.

Ethel Sharp, a minor, by her father as guardian ad litem, brought this action against the defendant, a corporation, which owns and operates a street railway in Ogden City, Utah, to recover damages for personal injuries, which, it is alleged, were suffered in a collision occasioned by the negligence of the defendant in operating its cars while she was a passenger on one of them. After alleging the necessary matters of inducement, and that two cars operated by the defendant running in opposite directions were caused to collide through defendant's negligence, she alleged she had sustained personal injuries "in and about her head, left ear, abdomen, body, and internal organs; and suffered a great and irreparable shock and injury to her nervous system, from which she was made sick and sore, and her hearing impaired, and was confined to her bed; and she has suffered great and continual pain as the results thereof, and, as she is informed and believes, will continue so for a long period of time, probably for the remainder of her life." It is then alleged how the injuries have affected plaintiff and have prevented her from attending school and from following her usual vocation. Damages were prayed for.

The defendant in its answer denied negligence on its part, and further alleged that if plaintiff was injured and damaged by such collision both were greatly enhanced by reason of her own negligence in failing to secure proper medical attention and in failing to exercise ordinary care in caring for her injuries.

According to defendant's abstract of the evidence, the father

of the plaintiff testified that she, at the time of trial, was about 17 years of age; that she was injured in a collision on the morning of the 12th day of January, 1914, while a passenger on one of defendant's street cars; that since her injuries she had been "very sickly and an invalid nearly all of the time"; that she was confined to her bed about 10 months, beginning the day after the accident; that she, ever since the accident, had "been almost entirely incapacitated for work"; that before the injuries she was strong and healthy and had always helped her mother in doing the ordinary household work. The witness, in the language of a layman, also described the injuries and bruises as he saw them on the body of the plaintiff after she came home in the evening after school, the accident having occurred in the morning while she was on her way to school. The witness said that he examined plaintiff's body and that he "saw a slight bruise * * * immediately below the ribs on the right side" of her body. He further said "she was lame in her right leg, and this continued for 6 or 8 months; she has complained of headaches ever since; she seemed unable to sleep soundly at all for many months and seemed nervous and unstrung."

On cross-examination the witness a little more fully described what he had observed on plaintiff's body on the evening of the day of the accident, and that he did not discover anything, except two slight bruises on her body and a discoloration of the right side, and some injury to the ear; that the family physician was called in to see plaintiff; that he visited her a number of times and prescribed some remedies; that plaintiff did not take a great deal of medicine. Other witnesses were called who testified to the accident and of seeing plaintiff on the morning when it occurred and immediately thereafter; that she went to school as usual on the day of the accident, and from her actions and conduct she did not seem to be greatly injured, if at all. The family physician and another doctor also testified to plaintiff's physical condition as they observed it immediately before the trial.

It is not necessary to state the evidence further, and we have given the foregoing, not as a synopsis of the whole evidence, but merely as indicative of the trend of plaintiff's evi-

dence, and for the purpose of aiding the reader to better understand the alleged errors which we shall hereafter discuss.

The jury returned a verdict in favor of plaintiff for $4,000 upon which judgment was duly entered, from which the defendant appeals. While numerous errors are assigned, yet appellant's counsel, in their brief, limit the propositions or errors relied on to four only. Giving their position in their own language, it is this:

"Our position is, that the court erred, first, in excluding testimony as to the conduct of the plaintiff during the two days following the accident; second, that it erred in permitting and allowing the physicians for the plaintiff to testify that the collision in question produced the injuries complained of; and, third, that the court erred in refusing the physical examination under the record in this case; and, fourth, that it therefore erred in refusing a new trial."

The first alleged error arose as follows: A Miss Thomas, who was on the car with the plaintiff at the time of the accident, was called by plaintiff, and she testified fully what she observed, and described plaintiff's conduct both in her testimony in chief and upon cross-examination. In concluding her cross-examination, however, defendant's counsel put this general question to the witness:

"Did you notice anything in her (plaintiff's) condition that indicated that she was hurt?"

The question was objected to as incompetent and immaterial. The court sustained the objection, and the defendant duly excepted, and now insists that the ruling was prejudicial to the defendant's rights. Counsel, in their brief, arguing the alleged error, say:

"The question was on cross-examination and was a general summary aside from the direct questions of her observations of the plaintiff."

The record shows this statement to be correct. We think that, in and of itself, is sufficient ground for holding the ruling, if erroneous at all, not to have been prejudicial to the defendant's rights. The witness had fully stated her observations concerning plaintiff's actions and conduct. The answer to the question would, therefore, merely have been in the na-

ture of a conclusion on her part or a "summary," as counsel describe it. While no doubt it would not have constituted error, under the circumstances of this case, if the court had allowed the witness to answer the question, yet, upon the other hand, it is very clear that in view that the defendant was permitted to develop all the witness heard and observed concerning the plaintiff and her conduct no prejudice could have resulted to the defendant from the ruling of the court.

In connection, with the foregoing counsel also complain that the court erred in excluding one of the answers of one of defendant's witnesses who was the conductor on the car in which plaintiff was riding on the morning of the accident. The witness, after stating that he had observed the plaintiff and some others after the accident, in answer to the direct question, said:

"Following the accident, the morning after, all seemed to be cheerful; all had a little laugh together with each other, and went along not noticing there was anything wrong with this girl whatever."

This answer was stricken on motion of plaintiff's counsel, and the defendant excepted. It is insisted that its exclusion constituted prejudicial error. While, like in the matter just discussed, the court might, without prejudice, have permitted the answer to stand, yet, in view that here again the defendant was permitted to fully develop all of the facts and all that the witness observed concerning plaintiff and her acts and conduct with others who were on the car, no injury could have resulted to the defendant from the court's ruling.

The second proposition argued by counsel, namely, the alleged error in permitting the physicians to be called on behalf of plaintiff to testify to certain matters, is, in our judgment, also without merit. It was made to appear that the injuries sustained by plaintiff consisted of bruises visible only on the surface of the body. It also appeared that after the accident she became an invalid and that the functions of her sexual organs were affected in that menstruation became irregular and obstructed. Complaint is now made that the doctors were permitted to state that in their opinion the injuries testified to that plaintiff suffered could,

and probably did, produce the alleged ailments, including the obstructed menstruation. Counsel, therefore, insist that the doctors thus invaded the province of the jury whose duty it was to say what caused plaintiff's ailments and how she had received them. True it is, that the ultimate facts respecting the extent of the alleged injuries and damages which it is alleged plaintiff suffered and what caused them were for the jury. It is, however, also true that in case the injuries that are suffered by an individual, as in this case, where the extent thereof cannot be observed in the ordinary way, and it is shown that certain invisible organs of the body are affected, a physician who testifies as an expert may give his opinion concerning the effect that a certain injury on the body may produce upon such organs. Certainly the jurors, who are merely laymen, and who are wholly inexperienced in such matters, could only guess at what effect certain injuries to the body might have upon certain sexual organs of an injured female. While it may be true that even a physician may not absolutely know, or be able to say with positiveness (since it is largely a matter of diagnosis), just what may have caused or produced the ailment in question, yet, as an expert, he may give his opinion. The jury, as a matter of course, must ultimately determine whether the accident was the proximate cause of the injuries and damages complained of. The experts' opinions are, however, proper as evidence, and it is for the jury to say what, if any, weight or effect they will give to such evidence. The second proposition can therefore not be sustained.

The third assignment arises as follows: At the trial both the father and the plaintiff described as nearly as they could her injuries, and in doing that referred to the several parts of the body where it was claimed she was injured. **4** As already indicated, most of plaintiff's symptoms were subjective rather than objective. At the trial, and after plaintiff had rested, defendant's counsel asked the court to make an order that the plaintiff be required to submit to a physical examination to be made by certain physicians selected by the defendant, and in the presence of plaintiff's physician, and in the presence of her father. Counsel for the plaintiff objected to such an order upon the ground that the court was

powerless to make it. The court declined to make the order upon the sole ground, however, that it was without power to do so in view of the ruling of this court in the case of *Larson* v. *Salt Lake City,* 34 Utah 318, 97 Pac. 483, 23 L. R. A. (N. S.) 462. Counsel for the defendant seek to distinguish this case from the Larson Case for the reason that in that case the application was made before or in advance of the trial, while in this case it was made at the trial and after plaintiff and her witnesses had fully described her injuries and symptoms. It is now urged that all that was decided in the Larson Case was that the court was powerless to compel the plaintiff to submit to a physical examination where the application therefor was made before trial. While it is true that in the Larson Case the application for the physical examination was made some time before the trial, and we there held that the court was without power to compel the plaintiff to submit to such an examination, yet the decision is not limited to such a case. If the court is without power to compel a plaintiff to submit to an examination of his or her body before trial it is as powerless to do it upon the trial, except as such an examination may be proper as a part of the cross-examination, as explained in the Larson Case. What we held in the Larson Case was, that the court was powerless to compel the plaintiff to submit to a physical examination with the exceptions there stated, and not that it was powerless to do so only at a particular time. We considered the question there in all of its phases, and it is not necessary to add anything to what we there said. This contention, therefore, must likewise fail.

In view of the foregoing it is not necessary to discuss the fourth proposition, namely, that the court erred in refusing a new trial.

The judgment is affirmed, with costs to respondent.

McCARTY J., concurs.

STRAUP, C. J. (concurring).

Since, as in the Larson Case, the court was powerless to make the order, notwithstanding the application was timely, for stronger reasons was the court powerless on such a belated application as here was made. Even in jurisdictions where

the power is recognized, yet courts generally refuse to exer-
cise it on untimely applications.

I think the testimony of the conductor referred to was prop-
erly stricken. What he, on the morning after the accident,
observed concerning the physical or mental condition of the
plaintiff, or whatever she may have said or done against inter-
est, would have been proper to put in evidence. But that her
schoolmates or others were cheerful, or referred to the acci-
dent in jocular terms, and seemed to act as though they no-
ticed nothing wrong with the plaintiff, was just as incompe-
tent and irrelevant as would have been testimony that they
were depressed or that they said or did something to indi-
cate that the plaintiff was seriously injured.