# Kokomo, Marion and Western Traction Company *v.* Walsh.

[No. 8,462.   Filed March 3, 1915.]

1. CARRIERS.—*Injuries to Passengers.—Complaint.*—In a passenger's action for personal injuries by being thrown to the floor of a car, where the complaint charged negligence in the starting of the car suddenly and violently and without warning at a time when plaintiff was on her feet preparatory to alighting, an averment therein that "by the rules of defendant the motorman acts entirely in accordance with said conductor's signals", etc., was unnecessary to the negligence charged; hence the complaint was not insufficient for failure to set out such rules.   p. 184.

2. APPEAL.—*Briefs.—Questions Reviewable.—Objections to Instructions.*—Nothing is presented by propositions in appellant's brief under "Points and Authorities", relative to the repetition of instructions, where there is nothing to indicate the particular instructions or the propositions complained of as having been repeated, and appellant's statement concedes that such repetition, while not commendable, is not within itself reversible error. p. 186.

3. DAMAGES.—*Personal Injuries.—Physical Examination of Plaintiff.*—At common law the defendant in a personal injury case had no right to physical examination of the plaintiff, but the doctrine now prevails in this State that the trial court, on proper showing timely made, may require the plaintiff to submit to such examination.   p. 191.

4. DAMAGES.—*Personal Injuries.—Physical Examination of Plaintiff.*—The right to a physical examination of plaintiff in an action for personal injuries rests in the sound discretion of the trial court, the exercise of which is reviewable on appeal and correctible in cases of abuse; and the order for such an examination, when made, may be enforced, not by punishment as for contempt, but by delaying or dismissing the proceeding.   p. 192.

5. DAMAGES.—*Personal Injuries.—Physical Examination of Plaintiff.*—Ordinarily a physical examination of plaintiff in an action for personal injuries should be applied for and made before en-

tering upon the trial, and should be ordered and conducted under the direction of the court, when it appears that justice requires such examination, and that it may be made without danger to plaintiff's life or health, or the infliction of serious pain.  p. 192.

6.  DAMAGES.—*Personal Injuries.—Physical Examination of Plaintiff.—Abuse of Discretion.—Appeal.*—The refusal of a proper and timely application for a physical examination of plaintiff in a personal injury case is such an abuse of discretion as will work a reversal, where the circumstances and conditions shown by the record on appeal make it reasonably clear that the application should have been granted.  p. 192.

7.  DAMAGES.—*Personal Injuries.—Physical Examination of Plaintiff.—Refusal of Application.*—Where the record discloses that a physical examination of plaintiff asked for by defendant would have necessitated a rupture of plaintiff's hymen, thereby destroying the seal of her virginity and producing pain and flow of blood, the trial court was justified in refusing the application, and such refusal was not controlling in favor of a subsequent application which, for other reasons, was properly refused.  p. 193.

8.  DAMAGES.—*Personal Injuries.—Physical Examination of Plaintiff.—Refusal of Application.*—The facts that the averments of the complaint were not specific as to the character of plaintiff's injury, that plaintiff on examination before trial stated that she had not been previously examined by her physician, that defendant was refused further examination the day before the trial, and that plaintiff then procured an examination by her own physician and had the benefit of his testimony at the trial, are of no controlling importance as showing an abuse of discretion in the refusal of an application made during the trial for a further physical examination of plaintiff, where the record discloses that defendant had notice of the character of the injuries and made no motion to have the complaint made more specific, and that no statement by plaintiff was incorrect or of such character as to mislead defendant in any way so as to excuse it from taking proper and timely steps for a further examination if it deemed the first unsatisfactory.  p. 194.

9.  DAMAGES.—*Personal Injuries.—Physical Examination of Plaintiff.—Duty of Court.*—While the power of the court to order a physical examination of plaintiff in a personal injury case is based on the supposition that without its exercise injustice may be done the defendant, the court should not look to the rights of the defendant alone, but should also consider the age and sex of the plaintiff and nature and the character of the examination involved, since otherwise the exercise of the power may tend to defeat, rather than to promote, justice.  p. 195.

10.  DAMAGES.—*Personal Injuries.*—*Physical Examination of Plaintiff.*—*Subsequent Application.*—Where defendant has had a physical examination of the plaintiff, a second or subsequent application is properly refused, 'in the absence of a showing of a good reason or necessity for same.  p. 196.

11.  DAMAGES.—*Personal Injuries.*—*Physical Examination of Plaintiff.*—*Refusal of Application.*—*Review.*—On a record showing that plaintiff, a young woman, suffered injuries involving a serious organic displacement, an examination of which was had by defendant, though not to the extent desired; that defendant had full knowledge of the character of the injuries long before the trial; that a subsequent application for further examination, the overruling of which is urged as error, was 'not made until after the trial commenced, and that it designated the physicians whom the defendant desired to make the examination, etc., the court on appeal can not say that the overruling of such application was an abuse of the discretion lodged in the trial court.  p. 197.

From Howard Circuit Court; *William C. Purdum,* Judge.

Action by Anna T. Walsh against the Kokomo, Marion and Western Traction Company.  From a judgment for plaintiff, the defendant appeals.  *Affirmed.*

*Morrison & McIntosh* and *Bell, Kirkpatrick & Voorhis,* for appellant.

*Blacklidge, Wolf & Barnes,* for appellee.

HOTTEL, C. J.—Appellee recovered a judgment against appellant for $2,500, damages for personal injuries received by her while a passenger on one of its cars.  From this judgment appellant appeals and by its assignment of errors challenges the ruling on its demurrer to the complaint and, its motion for new trial.

The only reference to the complaint found in appellant's brief, under the heading, "Points and Authorities," is the statement that, "where a violation of a rule is relied

1.  upon the same should be set out in the complaint."

There is an averment in the complaint, "that in stopping and starting said car for the purpose of permitting passengers to alight from the same the conductor has sole charge, and, *by the rules of the defendant,* the motorman

acts entirely in accordance with said conductor's signals, directions and instructions.'' For the purposes of this case, it is not necessary that we should decide whether, where the violation of a rule is relied on as negligence in a personal injury action, such rule should be set out in the pleading, nor, is it necessary that we decide whether appellant's objection to the complaint pointed out in its brief, as above indicated, is sufficient under the rules of the court to present any question, for the reason that the other averments of the complaint show that such objection is without merit. These averments are as follows: ''That the said conductor and motorman stopped said car at said corner, and after the same had come to a complete stop, plaintiff arose from her seat and was walking in said passageway or aisle toward the sliding door, which stood partially open. That while plaintiff was so walking, as aforesaid, and while she was a distance of only a few feet from said rear door, the *defendant by and through its said conductor and motorman negligently and carelessly started said car in motion forward and did so suddenly and violently, without giving any signal or warning to this plaintiff.* That, by reason of said negligence and carelessness of the defendant and the said sudden and violent movement of said car, the plaintiff was then thrown violently toward the back of same, against the edge of said partially opened rear door and struck same with great force.'' This language of the complaint makes clear the fact that the negligence relied on was not the breach of a rule, but the acts of the appellant by and through its conductor and motorman, viz., the negligent and careless starting of the car suddenly and violently and without signal or warning at a time when appellee was on her feet attempting to go out of the car to alight. The averment relative to the rules was merely an incidental or collateral averment, unnecessary to the negligence charged. The complaint is sufficient independent of and without such averment.

Under the heading, ''Points and Authorities,'' in appel-

lant's brief, subdivisions one and two are as follows: (1)
"If a legal proposition is once clearly and fully
2. stated to a jury, the court should not repeat the same
in other instructions, and, while such repetition may
not within itself be reversible error in this case, when taken
in connection with other errors relied upon, this cause should
be reversed. *Muller* v. *Bower* [1899], 22 Ind. App. 294,
298, [53 N. E. 790]." (2) "Such repetition in instruc-
tions tends to confuse a jury and gives undue emphasis and
prominence to a particular fact, and this practice should
be avoided by the trial court. *Union Mut. Life Ins. Co.* v.
*Buchanan* [1885], 100 Ind. 63, 80." Nothing is presented
by these points for either of two reasons: (1) The par-
ticular instructions subject to the infirmity complained of
are not indicated nor, is the proposition complained of as
being repeated, indicated; (2) appellant concedes that repe-
tition of the same proposition in different instructions, while
not commendable, is not within itself reversible error. In
addition to the authority cited by appellant on this question,
see, *Modern Woodmen, etc.* v. *Kincheloe* (1911), 175 Ind.
563, 566, 94 N. E. 228, Ann. Cas. 1913 C 1259; *Miller* v.
*Coulter* (1901), 156 Ind. 290, 298, 59 N. E. 853.

The other questions presented by appellant's brief are
those predicated on the 25th and 26th grounds of its motion
for new trial, which, in effect, present the same question,
viz., that the court erred in overruling appellant's motion to
appoint Drs. W. H. McClurg, J. W. Wright and Edgar Cox,
to make a physical examination of appellee, which motion
was made immediately after Dr. N. C. Hamilton, a witness
called in behalf of appellee, had closed his testimony and
before appellee rested her cause. It is very earnestly in-
sisted that this ruling of the court was erroneous and prej-
udicial to appellant. As affecting this ruling the record
discloses the following proceedings connected therewith.
The averments of the complaint with reference to the par-
ticular injury involved in the motion for such examination

are as follows: "That by reason of the suddenness, violence and great force of plaintiff's fall and blow hereinbefore described, plaintiff suffered a very serious organic displacement, which plaintiff desires not to describe and plead in detail unless required by defendant so to do. That the defendant has been heretofore fully advised of the nature of such injury and now has entire knowledge thereof. That plaintiff is a young woman of the age of twenty-one years. * * * That by reason of said injuries plaintiff has an almost unbearable constant pain in her side; that the natural functions of her person are no longer performed, except with great irregularity, assisted by artificial means and accompanied with great pain and suffering; that she has become extremely nervous and has lost her natural self-control; that she experiences periodic attacks of nausea and is frequently confined to her bed therewith. * * * That said injuries except those to the limb, are permanent unless the same can be remedied and overcome by a surgical operation. That said operation consists in cutting and laying open the abdomen and the performance of very delicate and skilled surgery. That such operation is unsuccessful in more cases t'ian those in which it is successful and is extremely dangerous to the life and physical condition of the patient."

On January 24, being the 15th judicial day of its January term, 1912, the trial court, on the motion of appellant appointed Drs. W. H. McClurg and J. W. Wright to make a physical examination of appellee at her residence at one o'clock p. m. January 27, 1912. An examination was made on the day named. On February 13, 1912, the cause proceeded to trial and at the close of the testimony of appellee's witness, Dr. N. C. Hamilton, appellant filed a written motion for a physical examination of appellee, which motion is as follows: "The defendant at this time immediately after Dr. N. C. Hamilton has concluded his testimony and before the plaintiff has testified in her own behalf and before the plaintiff has rested her cause, moves the court that the

physicians heretofore appointed by the court, to wit, Drs. W. H. McClurg and J. W. Wright, and also Dr. Edgar Cox be appointed by the court to make an examination of the plaintiff of the same kind and character that is testified to by Dr. N. C. Hamilton the last witness upon the stand, and that plaintiff be ordered to submit to such examination for the reason that it is now disclosed that such examination can be made without any surgical operation and without in any wise interfering with the plaintiff's hymen and without any injury to the plaintiff, and in support of this motion we will refer to the evidence of the last witness on the proposition that it can be made without resulting in any injury to the hymen, and also tender with this motion the affidavits of Dr. J. W. Wright and Lex J. Kirkpatrick, in support of this motion, to the effect that when examination was made by said Dr. Wright and Dr. McClurg that they were refused by the plaintiff the privilege of making examination in the vagina to an extent greater than an inch or so, on the ground that she and her mother would not permit it. And for the further reason that this examination of Dr. Hamilton or permission to him to make examination was granted, and examination was made only day before yesterday, several days after she had refused an internal examination to the doctors appointed by the court, and since her examination under oath was taken in this cause; that it would not be fair to the defendant to deny the physicians appointed by this court or any reputable physician that might be selected by the defendant, to make the same kind of an examination that has been made by a physician of her own selection; that this motion is made solely for the purpose of securing evidence of reputable and competent physician and physicians appointed by this court of ascertaining as far as internal examination would disclose the condition, in order that substantial justice may be had in this cause."

To this motion appellee's attorney interposed the following objection, viz., "The plaintiff objects to the motion and

asks that it be overruled for the reason that when the attorneys for the defendant asked for an examination in open court they stated that they had learned from their physician that it would be necessary to cause a rupture of the hymen and cause pain and bleeding, * * * that it was refused by the plaintiff for that reason and that only; that no resistance was made to an examination that could be made without rupturing the hymen, because no such offer was made by the defendant in this case; that * * * (neither) plaintiff nor her attorneys knew that an examination could be made without rupturing the hymen at the time the motion was formerly made in court and only learned of that fact afterwards; that the physicians appointed by the court in this case to examine for the defendant went to the house of the plaintiff at the appointed time and made the examination and we tender herewith the affidavits of Dr. Roscoe Chancellor, Conrad Wolf, Earl B. Barnes, Mrs. Maggie Walsh * * * and of Anna T. Walsh * * * that no resistance whatever was offered by her to the physicians appointed by the court to make any examination; that the physicians so appointed made all the examination they asked to make at that time; that all the examination that they asked to make was made by them and no resistance whatever was made to them; that nothing whatever was said upon the subject until Dr. Wright was about to leave the residence when he said that it would be impossible for him to make further examination without rupturing the hymen and that he would not ask to do that. And, further than that, that no other offer was made by the defendant in the case except the motion based upon what the counsel stated he had got from the physician that it would be necessary to rupture the hymen and cause pain and bleeding, and that this application coming after the case is in the midst of the trial comes too late, and furthermore, in the original motion made in this cause no verified application was made

and the court did not deny it, and the court simply stated it would be heard later and it was never renewed.''

The appellant supported its motion by the affidavit of one of its attorneys and by J. W. Wright one of the examining physicians. The appellee supported her objections to the motion by her own affidavit, the affidavits of her mother and another physician who was present at the examination, and by a joint affidavit of two of her attorneys. These affidavits are too lengthy to set out in this opinion. It is sufficient to say that the affidavit of J. W. Wright is to the effect that he and the other physician appointed by the court made an external physical examination of appellee and proceeded to make an internal examination through the vagina, that after entering a short distance they found that appellee was a virgin and that they could not make further examination of her without breaking the hymen and so told appellee and told her that it would cause pain and slight hemorrhage, and that appellee and her mother when so informed both objected and requested that such examination be not made. It is not stated, however, in such affidavit that any examination with a virgin speculum and sound was mentioned. On the contrary the affidavit shows that the examination contemplated was one that would break the hymen. The affidavit of appellant's attorney supports practically all the averments of the motion.

The affidavits of appellee and her mother and Dr. S. Roscoe Chancellor are each to the effect that the examining physicians, when they found that appellee was a virgin, declined to go further with the examination giving as their reason that they could not go further without breaking the hymen, and that they would not ask to do that. That no examination with a virgin speculum was mentioned. Appellee's attorneys, Messrs. Barnes and Wolf in their joint affidavit support practically all the statements made in their objections to the motion, above set out, and state that they notified appellant as to the character of appellee's injuries

as early as December 31, 1910, and that appellant has had full knowledge of the character of such injuries since that time; that neither appellee nor her attorneys, before the trial, were even asked to submit to any examination except one involving the rupture of the hymen and that they never refused any other examination.

Upon these facts we are asked to determine whether the trial court committed error in overruling said motion. At common law appellant had no right to a physical examination of appellee in an action for personal injury, and the common-law doctrine still prevails in some jurisdictions. Most jurisdictions contain conflicting decisions on the question, some asserting the inherent power of the court to order an examination when a proper showing therefor is timely made, and others asserting that such power is not inherent in the court and exists only when conferred by legislative enactment. *City of South Bend* v. *Turner* (1901), 156 Ind. 418, 60 N. E. 271, 83 Am. St. 200, 54 L. R. A. 396, and cases cited; *Larson* v. *Salt Lake City* (1908), 34 Utah 318, 97 Pac. 483, 23 L. R. A. (N. S.) 462, and cases cited. The Supreme Court of the United States, Justices Brewer and Brown dissenting, held in effect that the courts do not have the inherent power to require such an examination. *Union Pac. R. Co.* v. *Botsford* (1891), 141 U. S. 250, 11 Sup. Ct. 1000, 35 L. Ed. 734. The earlier cases in the New York inferior courts both affirmed and denied such inherent power of the court, with the result that the legislature of that state in 1893, passed a law conferring such power. *Walsh* v. *Sayre* (1868), 52 How. Pr. (N. Y.) 334; *Shaw* v. *Van Rensselaer* (1880), 60 How. Pr. (N. Y.) 143; *McQuigan* v. *Delaware, etc., R. Co.* (1891), 129 N. Y. 50, 29 N. E. 235, 26 Am. St. 507, 14 L. R. A. 466; *Cole* v. *Fall Brook Coal Co.* (1899), 159 N. Y. 59, 53 N. E. 670. The earlier decisions of the courts of appeal of our own State are in conflict, but the later decisions commit such courts to a recognition of the doctrine that the trial court, on proper

showing, timely made, may require the injured plaintiff to submit to an examination. *Kern* v. *Bridewell* (1899), 119 Ind. 226, 21 N. E. 664, 12 Am. St. 409 (right denied); *Hess* v. *Lowrey* (1890), 122 Ind. 225, 23 N. E. 156, 17 Am. St. 355, 7 L. R. A. 90; *Terre Haute, etc., R. Co.* v. *Brunker* (1891), 128 Ind. 542, 26 N. E. 178; *Pennsylvania Co.* v. *Newmeyer* (1891), 129 Ind. 401, 28 N. E. 860 (right denied); *City of South Bend* v. *Turner, supra.* To the same effect are the later decisions of most jurisdictions. See, 5 Current Law 1022 note to §4; *Western Glass Mfg. Co.* v. *Schoeninger* (1908), 42 Colo. 357, 94 Pac. 342, 126 Am. St. 165, 15 L. R. A. (N. S.) 663, 668, and cases cited; *Schroeder* v. *Chicago, etc., R. Co.* (1877), 47 Iowa 375; 14 Cyc. 364; cases collated in annotated note to *Larson* v. *Salt Lake City* (1908), 23 L. R. A. (N. S.) 462, 463, *et seq.*

In affirming the existence of such power in the trial court, our Supreme Court in the case of *City of South Bend* v. *Turner, supra,* 428, 429, laid down the following propositions as established by the cases therein cited, viz., "(1) That trial courts *have the power* to order the medical examination by experts of the injured parts of a plaintiff who is seeking to recover damages therefor; (2) *that a defendant has no absolute right to demand the enforcement of such an order, but the motion therefor is addressed to the sound discretion of the trial court;* (3) *that the exercise of such discretion is reviewable on appeal, and correctible in cases of abuse;* (4) *that the examination should be applied for and made before entering upon the trial,* and should be ordered and conducted under the direction of the court, whenever it fairly appears that the ends of justice require a more certain ascertainment of important facts which can only be disclosed, or fully elucidated, by such an examination, *and such an examination may be made without* danger to the plaintiff's life or health, or *the infliction of serious pain;* (5) that the refusal of the motion, *when the circumstances ap-*

*pearing in the record present a reasonably clear case for the examination under the rules stated* is such an abuse of discretion in the trial court as will operate to reverse a judgment for the plaintiff; (6) that such an order may be enforced, not by punishment as for a contempt, but by delaying or dismissing the proceeding." (Our italics.) It appears from these authorities that the request for such an examination is addressed to the sound discretion of the trial court, and it follows that we must determine in the instant case whether the facts disclosed by the record are such as to indicate a reasonably clear case for the examination within the rules above indicated.

The record affirmatively shows that appellant, before the trial, requested an order for an examination of appellee's injuries, and that pursuant to such request the court 7. granted the order and appointed two reputable physicians to make the examination at the time and place named in the order. The physicians so appointed made such examination. During its progress they discovered that appellee was a virgin and they informed her and her mother that a further internal examination would require them to rupture the hymen. According to the affidavit of one of the physicians, appellee and her mother then refused to allow them to rupture or break the hymen and for this reason they did not proceed further with their examination. On this question the examining physician is contradicted by appellee, her mother, and by another physician, who were present at the examination, they all swearing, in effect, that when the examining physicians discovered the condition of the hymen they declined to make any further examination for the reason that they did not desire to rupture it, and that neither appellee nor her mother refused to permit such examination. It is not claimed by the examining physicians themselves that they then asked to make an examination with the virgin speculum and sound, or that they had such instruments with them. In view of these facts, disclosed by

the record, we would assume, if necessary to support the ruling of the trial court, that neither appellee nor her mother refused the examining physicians the right to go further with their examination. However, we do not think such assumption necessary or of controlling importance, because, as stated in appellee's brief, the examination suggested was one "which would destroy the seal of appellee's virginity and would cause pain and a flow of blood" and hence afford justification for appellee's refusal to submit to it. An examination which involves serious pain should not be ordered. *City of South Bend* v. *Turner, supra; Louisville, etc., R. Co.* v. *Hartledge* (1903), 25 Ky. L. R. 152, 74 S. W. 742; *Boelter* v. *Ross Lumber Co.* (1899), 103 Wis. 324, 79 N. W. 243; *Atchison, etc., R. Co.* v. *Palmore* (1904), 68 Kan. 545, 75 Pac. 509, 64 L. R. A. 90. For said reason appellee's counsel were justified in objecting to and the court was justified in refusing, the examination asked by appellant the day before the trial, and such objection of counsel to such examination and the refusal of the court to grant it should have no controlling influence in favor of a later request for such examination which, for other reasons, should be refused.

We have heretofore indicated the averments of the complaint relative to appellee's injuries. It is insisted by appellant that these averments were not sufficient to advise it as to the character of such injuries; that the appellee when examined before the trial stated that she had not been internally examined by her own physician; that appellant asked a further examination the day before the trial and was refused it; that appellee then procured an examination by her own physician and had the benefit of his testimony at the trial; that all these facts are important and should be considered in determining whether the trial court permitted appellee to obtain an unfair advantage in the evidence as to her injuries, and for this reason abused its discretion when it overruled appellant's motion.

While the facts indicated by appellant should doubtless be considered in determining the question involved they are robbed of any controlling importance or influence by the other facts disclosed by the record. It does not appear from the record that appellant ever asked to have appellee make her complaint more specific in its averments as to the nature or character of her injuries and the undisputed affidavit of appellee's attorneys shows that they notified appellant's attorneys of the character of appellee's injury as early as December 31, 1910, and that they had full knowledge thereof from and after such time until the trial of said cause in February, 1912. It is not claimed that appellee submitted to any internal physical examination before she was examined by appellant as a witness before the trial, and hence her statement at such examination was correct. Neither is it claimed that there was anything in her statement to indicate that she did not intend to submit to such internal examination by her own physician before the trial. There was nothing in her statement to mislead appellant or that could serve as an excuse for its failure to seasonably take the proper steps necessary to secure further examination of the appellee, if the first was not satisfactory. True appellee did not afterwards advise appellant that she had submitted to an internal physical examination by her physician in which a virgin speculum and sound was used, but she was under no obligation to furnish appellant with such information. Nothing appears from the showing made by appellant that either appellee, or her attorneys said or did anything to warrant appellant in the belief that appellee would not make the preparation for trial usual in such cases, and avail herself of all legitimate evidence that might be beneficial to her case.

9. The power of the court to grant an order requiring an examination of the plaintiff in such cases is based on the supposition that without its exercise injustice may be done the defendant. On this subject the

Supreme Court in the case of *City of South Bend* v. *Turner, supra,* 429, said: "When it becomes a question of probable violence to the refined and delicate feelings of the plaintiff on the one hand, and probable injustice to the defendant on the other, the law will not hesitate—the court in making such orders, with respect to time, place, and persons, in every case, having such due regard for the feelings of the plaintiff and proprieties of the case as the ends of justice will permit." The court, however, in the exercise of such power should not look to the rights of the defendant alone. The age and sex of the person who is the subject of the examination, and the nature and character of the examination involved will all be considered by the appellate tribunal in determining whether the trial court has abused its discretion in a given case. To say that an examination should be ordered in every case would be to give to the defendant in such cases a weapon which might be used to defeat justice rather than to prevent injustice to itself. The subject of the examination in the instant case, her age, and the character of the examination involved can not be ignored by this court in determining whether the trial court abused its discretion in refusing to order such examination. Whether these facts alone would warrant the ruling made we need not, and do not, decide, because such ruling is not required to rest on such facts alone. The motion on which such ruling was based was a second application or motion, and in the absence of a showing of the necessity for, or good reason for a second examination it was properly refused. *Shepard* v. *Missouri Pac. R. Co.* (1885), 85 Mo. 629, 55 Am. Rep. 390; *Murphy* v. *Southern Pac. Co.* (1909), 31 Nev. 120, 101 Pac. 322, 21 Ann. Cas. 502; *Fillingham* v. *Michigan, etc., R. Co.* (1908), 154 Mich. 233, 117 N. W. 635; *Boelter* v. *Ross Lumber Co., supra;* *Malone* v. *Sierra R. Co.* (1907), 151 Cal. 113, 91 Pac. 522; *Belt Elec. Line Co.* v. *Allen* (1898), 102 Ky. 551, 44 S. W. 89, 80 Am. St. 374; *Louisville, etc., R. Co.* v. *McLain* (1902),

66 S. W. (Ky.) 391; *International, etc., R. Co.* v. *Gready* (1904), 36 Tex. Civ. App. 536, 82 S. W. 1061. The motion on which the ruling was predicated was not made until after the trial had begun and after appellee had examined a number of her witnesses, including her own physician, and appellant then had the advantage of having heard appellee's testimony on the subject concerning which it was asking for an examination. The authorities all agree that the application should be seasonably made, some of them expressly holding that an application made after the plaintiff has rested her case, came too late. *Hess* v. *Lowrey, supra; Terre Haute, etc., R. Co.* v. *Brunker, supra; Paul* v. *Omaha, etc., R. Co.* (1900), 82 Mo. App. 500; *Fullerton* v. *Fordyce* (1894), 121 Mo. 1, 42 Am. St. 516, 25 S. W. 587; *City of Chadron* v. *Glover* (1895), 43 Neb. 732, 62 N. W. 62; *Southern, etc., R. Co.* v. *Michaels* (1896), 57 Kan. 474, 46 Pac. 938. We do not mean to be understood as holding that circumstances might not arise which would require the trial court in the exercise of the sound discretion given it in such cases to grant such a motion even though filed after the case had proceeded to trial, but the delay in filing the motion in this case, under the rules stated by the Supreme Court, *supra*, and cases from other jurisdictions, is one of the facts which should be considered by this court in determining whether the trial court abused its discretion. See *Rief* v. *Great Northern R. Co.* (1914), 126 Minn. 430, 148 N. W. 309.

The appellant's motion named the physicians it desired the court to appoint. It has been held that a request for an examination by physicians selected by the *appellant alone* was properly refused. *Smith* v. *City of Spokane* (1897), 16 Wash. 403, 47 Pac. 888; *Gulf, etc., R. Co.* v. *Nelson* (1893), 5 Tex. Civ. App. 387, 24 S. W. 588. In answer to the proposition last quoted it may be said that two of the physicians here named were those whom the court had before appointed. This is true, but the record discloses facts which might have led the court to believe that such

physicians would then be objectionable to appellee and that fairness to both parties would require an appointment of other physicians. And, in any event, the appellant included in its motion a third physician of its own selection who may have been objectionable to appellee or the court, or both. In some jurisdictions the courts have held that three physicians are an unreasonable number to demand for such an examination. *Shepard* v. *Missouri Pac. R. Co., supra.* The record does not disclose the trial court's reason for the ruling made on said motion, but when we take into account the time when made, the character of the request, and all the facts and circumstances leading up to and connected with the matter involved therein as herein set out, this court can not say that the ruling thereon evidences any abuse of the sound discretion lodged with the trial court in such cases.

Finding no error in the record the judgment below is affirmed.

NOTE.—Reported in 108 N. E. 19. As to requiring party to submit to physical examination for purposes of evidence, see 49 Am. Rep. 724; 50 Am. Rep. 156; 3 Am. St. 554; 68 Am. St. 242; 14 L. R. A. 466; 23 L. R. A. (N. S.) 463. See, also, under (1) 6 Cyc. 626; (2) 2 Cyc. 1015; (3, 7, 8, 9) 13 Cyc. 231; 14 Cyc. 365; (4) 13 Cyc. 230, 231; 14 Cyc. 365, 366; 2 Cyc. 597; (5) 13 Cyc. 231; 14 Cyc. 365, 366; (6) 14 Cyc. 365; (10) 14 Cyc. 365; 13 Cyc. 1915 Anno. 230-new; (11) 14 Cyc. 365.