186 N.J. Super. 81 (1982)
451 A.2d 416
CARMEN DUPREY, PLAINTIFF,
v.
HENRY P. WAGER, M.D., MOON CHANG, M.D., ANGELO RINALDI, M.D. AND JERSEY CITY MEDICAL CENTER, DEFENDANTS.
Superior Court of New Jersey, Law Division Hudson County.
Decided July 23, 1982.
*84 Robert C. Carluccio for plaintiff (Carluccio & Carluccio, attorneys).
Michael J. Lunga for defendant Henry P. Wager, M.D. (Shanley & Fisher, attorneys).
Mary B. Rogers for defendants Moon Chang, M.D., Angelo Rinaldi, M.D., and Jersey City Medical Center (Lamb, Chappell, Hartung, Gallipoli & Coughlin, attorneys).
YOUNG, J.S.C.
The "good cause" required to be shown to compel a physical examination of a party, the reasonableness of a party's refusal to submit to the requested physical examination, and the factors which enter into the exercise of judicial discretion in the circumstances are issues presented by the pending motion. R. 4:19. In this medical malpractice action, defendant, Henry P. Wager, M.D., moves for an order to compel plaintiff Carmen Duprey to submit to a procedure known as hysterosalpingography, which procedure is resisted on the grounds of being unreasonable in the circumstances.
Plaintiff alleges that Dr. Wager, engaged to remove the right ovary which was large and cystic, also removed the right fallopian tube which rendered her sterile. It appears undisputed that the left fallopian tube was not visualized during the surgery performed when the plaintiff was 39 and unmarried. Plaintiff remains unmarried and places emphasis upon that status in her affidavit, quoted here in essential parts:
I feel a hysterosalpingogram would invade the privacy of my person and impede my chances of eventually marrying because of the absence of a hymen which is considered a prerequisite by many of my countrymen before marriage.

*85 Just the thought of undergoing such an examination causes me such stress and mental anguish.
My personal physician, Juan A. Mendoza, M.D., advised me that an alternate procedure was available.
Dr. Esther Garcia advised me that such a performance [sic] would be very painful to a virgin and that it is usually for a woman who is not.
Hysterosalpingography involves the injection of radiopaque substances into the uterus and fallopian tubes for diagnostic purposes. Usually a cannula or catheter is inserted into the uterine cervical canal after visualization of the cervix through an appropriate speculum. A water-soluble opaque material is introduced into the uterine cavity. The procedure is carried out in a dark room and intermittent X-ray screening will show the shape of the uterus, filling of the tubes and peritoneal spill if it occurs. Browne, J.C. McClure, Postgraduate Obstetrics and Gynaecology, (4 ed. 1973), at 362.
Both parties have offered the reports of their respective experts describing the procedure, its purposes and the complications that may attend such a procedure. To perform this procedure a speculum is placed in the vagina and the cervix must be exposed. Plaintiff's expert maintains the procedure can "be painful normally and with the absence of tubes will be of even greater pain." The risk of infection is present, according to the medical expertise of both plaintiff's and defendant's physicians. Further complications that may result, according to defendant's expert, are hemorrhage and venous or lymphatic intravasation. Finally, plaintiff's expert states that no useful information can be obtained from that X-ray; it is only 70% accurate at the optimum and to subject plaintiff, who is a virgin, to this procedure would be unnecessarily cruel and painful, causing unusual physical and psychological trauma.
Pursuant to our rules, R. 4:19, the court in which a claim for personal injuries is pending may within its discretion order the plaintiff to submit to a physical examination or X-ray when "good cause" has been shown. The constitutionality of a statute granting a court the discretionary power to order a physical examination of the plaintiff was upheld in Golden v. Public *86 Service Co-ordinated Transport, 9 N.J. Misc. 1337, 157 A. 651 (Sup.Ct. 1931).
While the Golden case centered upon the taking of what was then referred to as "x-ray radiographs," the rationale in support of the order which directed plaintiff to submit to the procedure emphasized the safety factor.
A number of decisions of other jurisdictions have held that in the absence of statute the court could not compel plaintiff under an examination before trial to submit to the taking of x-ray radiographs. These decisions rested upon the lack of confidence of the court in the safety of the process, not on the lack of power of the court to require an examination before trial. [9 N.J. Misc. at 1338.]
The safety factor has been reiterated as a transcendant consideration in the cases to be reviewed.
The "good cause" required to be shown to compel a physical examination, together with the reasonableness of a party's refusal to submit thereto, are contending considerations which tend to overlap. It has been declared that while a court may order a physical examination of a party, such examination may not encompass a physical invasion of plaintiff's body. That guideline was expressed in the only reported case in this jurisdiction in which this issue was raised. In Andrus v. Fomfara, 3 N.J. Misc. 261, 263, 127 A. 788, 789 (Sup.Ct. 1925), the plaintiff alleged that a growth on his hip was caused by defendant's negligence. Defendant moved to compel plaintiff to submit to an examination which would require the excision of cells from the growth. The Supreme Court, while noting that the trial court had the power to order a party to submit to a physical examination, concluded that such power did not extend to the ordering of what would amount to a surgical procedure.
The showing demanded to satisfy a "good cause" requirement, whether imposed by statute or rule of court, has been the subject of reported opinions in other jurisdictions. "Good cause" has been satisfied when a defendant showed lack of evidence of plaintiff's physical condition, or that defendant lacked alternative means of procuring such knowledge, or when it was shown that plaintiff had already submitted to an examination of a *87 similar type which had been made by physicians of her own choosing. See Templin v. Erkekedis, 119 Ind. App. 171, 84 N.E.2d 728 (App.Div. 1949); Brown v. Chicago M & St. P. Ry. Co., 12 N.D. 61, 95 N.W. 153 (Sup.Ct. 1903). Additionally, the alleged severity of the injury or condition has constituted "good cause." Roskovics v. Ashtabula Water Works Co., 16 Ohio Op.2d 297, 174 N.E.2d 295 (C.P. 1961), where plaintiff suffered from multiple sclerosis. The medical testimony that a physical examination was necessary to determine the extent, nature and permanency of alleged injuries sufficed in Goldman v. Linkoff, 45 App.Div.2d 709, 356 N.Y.S.2d 101 (App.Div. 1974).
As noted, the competing consideration of the reasonableness of a plaintiff's refusal to submit to the requested physical examination is also weighed by the court. Some courts use a balancing test in which they attempt to assess the claimed risk or hazard which the contemplated examination will pose to the plaintiff. As expressed by the Supreme Court of Iowa, "The issue of risk presents a more difficult problem. This issue requires weighing the risk against need for the test results." McQuillen v. City of Sioux City, 306 N.W.2d 789, 791 (Sup.Ct. Iowa 1981). The report of that case presents a thorough explication of the judicial process of balancing the risks involved against the need for the physical examination. McQuillen defendant sought to subject plaintiff to arteriography, which involves a heart catherization and the injection of a radionuclide. Although conceded to be an unusual procedure, medical testimony assessed the risk of plaintiff's life and health to be 1.5%. That statistic persuaded the court, on balance, to order plaintiff to submit to the procedure.
When the potential physical and mental consequences appear to outweigh the probable benefits to the interests of justice, the court will be constrained to deny the examination sought by defendant. Hernandez v. Gulf Oil Corp., 21 F.R.Serv.2d 1378 (E.D.Pa. 1976). In that case the court refused to enter an order compelling plaintiff to undergo a bone scan when the *88 evidence established that the physical pain and psychiatric stress would be too great.
It must be shown that the examination sought by a defendant will not cause serious inconvenience or have a deleterious effect upon the plaintiff. Atchison T. & S.F.R. Co. v. Palmore, 68 Kan. 545, 75 P. 509 (Sup.Ct. 1904). However, the considerations of inconvenience and deleterious effect must be of such substantial measure that they reach beyond minor pain or discomfort.
Any enforced examination is vexatious and embarrassing, and very frequently must involve some slight degree of that discomfort which is denominated pain; but an examination may nevertheless be made with due consideration of both the sensibilities of the plaintiff and the demands of justice. [75 P. at 511.]
Controlling factors in several cases in which motions for physical examinations have been denied have included the projected exposure of a party to physical pain and even danger to life and health. Medical procedures which courts have refused to order a plaintiff to undergo include a cystoscopic examination, Carrig v. Oakes, 259 App.Div. 138, 18 N.Y.S.2d 917 (App. Div. 1940), in which leave to appeal was denied without opinion, 259 App.Div. 798, 18 N.Y.S.2d 918; the injection of a drug, colorgol, into the kidneys for diagnostic X-ray procedures, United States Fidelity and Guar. Co. v. Wickline, 103 Neb. 681, 173 N.W. 689 (Sup.Ct. 1919); an oxygen breathing test, Grill v. Mathieson Alkali Works, Inc., 243 App.Div. 853, 278 N.Y.S. 775 (App.Div. 1935); rendering a plaintiff unconscious by the administration of "laughing gas," Mackay Telegraph-Cable Co. v. Armstrong, 241 S.W. 795 (Tex.Civ.App. 1922); the withdrawal of spinal fluid, Texas Employers Ins. Ass'n v. Arnold, 105 S.W.2d 686 (Tex.Civ.App. 1937); the insertion of a catheter into the bladder for the extraction of urine, O'Brien v. La Crosse, 99 Wis. 421, 75 N.W. 81 (Sup.Ct. 1898). The common factor in those opinions was the medical evidence which documented a threat posed to the health and well-being of the plaintiffs by the petitioned-for pretrial discovery.
*89 When a female plaintiff alleges a cause of action arising from injury to her reproductive organs, the possibility that a physical examination will necessitate rupture of her hymen weighs heavily against ordering such an examination. A court will not order a procedure as part of a physical examination of a woman claiming to be a maiden "which would destroy the seal of appellee's virginity and would cause pain and a flow of blood." Kokomo M. & W. Traction Co. v. Walsh, 58 Ind. App. 182, 194, 108 N.E. 19, 23 (App.Div. 1915). In the language of another court, a plaintiff must not be required to "have appellee's person exposed, suffering humiliation and the loss of the evidence of her virginity," by submitting to an examination which would rupture the hymen and inflict pain associated with the vaginal exploration. Louisville Ry. Co. v. Hartlege, 25 Ky.L.Rep. 152, 153, 74 S.W. 742, 743 (Ct.App. 1903).
The deference of the courts to leave undisturbed the physical evidence of virginity, and the regard shown to pain concomitant to an internal examination, do not carry over to those instances when the party has already voluntarily submitted herself to an internal examination. Where it was shown that a plaintiff has submitted to an examination by two physicians of her own choosing, her objections that to submit to an examination on the application of the adversary would offend her modesty and feminine sensibilities did not prevail. Brown v. Chicago M. & St.P. Ry. Co., supra 95 N.W. at 156. In another case the objection that a requested vaginal examination would constitute invasion of plaintiff's privacy did not avail when the alleged results of just such an examination formed the basis of the action. Templin v. Erkekedis, supra 84 N.E.2d at 731.
A comprehensive and specific set of guidelines which may be helpful to courts in exercising discretion in these matters is found in Richardson v. Johnson, 60 Tenn. App. 129, 444 S.W.2d 708 (Ct.App. 1969). While some of the guidelines are procedural and not applicable to the issue at bar, the opinion does collate the factors which are operative in disposing of motions to *90 compel a party to submit to various types of physical examinations. The guidelines are here summarized, drawn from the opinion cited, 444 S.W.2d at 710:
1. The power to order a physical examination must be exercised with great restraint and with careful attention to the rights of the plaintiff.
2. The application must be supported by affidavit setting forth pertinent facts and reasons to justify the examination.
3. The physical examination should not be ordered where it appears that the information to be elicited would be merely cumulative.
4. Compelling considerations of justice on behalf of the defendant-applicant must be established.
5. The burden is upon the defendant-applicant to affirmatively establish that the requested physical examination can be conducted without considerable pain and danger to the plaintiff.
6. Adequate and appropriate precautions should be imposed so that privacy of the person is insured.
On the motion before this court it appears that whatever value the findings of a hysterosalpingogram would produce, that value would be exacted by the loss of the physical attribute of plaintiff's virginity. Additionally, the invasive procedure contemplated would not only inflict such permanent physical residuals, but those residuals would have far-reaching cultural dimensions in the ability of the plaintiff to contract marriage. These considerations are of far greater weight and substance than assertions of feminine modesty and embarrassment.
This court concludes that it does not affirmatively appear that the requested physical examination can be conducted without serious pain or danger to plaintiff. As previously noted, defendant's own medical expert concedes that several adverse reactions attend hysterosalpingography. Moreover, it has not been conclusively shown that the entry of an order will be necessary to afford justice to defendant physician. On balance, the risks attending the requested procedure clearly outweigh any benefits to justice to defendant. Accordingly, the motion of defendant Dr. Wager for an order to compel plaintiff Carmen Duprey to submit to the requested medical procedure is denied.