218 N.J. Super. 133 (1987)
526 A.2d 1156
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAY HASS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 31, 1987.
Decided June 16, 1987.
*134 Before Judges ANTELL, LONG and D'ANNUNZIO.
*135 Bruce M. Pitman argued the cause for appellant (Diamond and Pitman, attorneys).
Timothy Van Hise, Assistant Prosecutor, argued the cause for respondent (Nicholas L. Bissell, Jr., Somerset County Prosecutor, attorney).
The opinion of the court was delivered by LONG, J.A.D.
On June 20, 1986, the Somerset County grand jury returned an indictment charging defendant Jay Hass with two counts of aggravated sexual assault, contrary to N.J.S.A. 2C:14-2(c) (Counts One and Two); one count of criminal sexual contact, contrary to N.J.S.A. 2C:14-3(b) (Count Three) and one count of sexual assault, contrary to N.J.S.A. 2C:14-2(b) (Count Four). The indictment claimed that between December 1, 1985, and April 20, 1986, the crimes charged in Counts One, Two and Three were perpetrated against B.C., who was then between 13 and 16 years old, and that the crime charged in Count Four was perpetrated against B.C.'s brother, K.C., who was then under 13 years of age. Hass, who became friendly with the two youths and their family through a volunteer program, was alleged to have been more than four years older than each victim at the time of the offenses.
Hass filed two motions with respect to the indictment. The first was to obtain the school and medical records of the victims and to require that they submit themselves for psychiatric and psychological evaluations. In support of this motion, Hass submitted his own certification and that of two other individuals which indicated, among other things, that B.C., who was 15 years old, repeated eighth grade three times; still defecated in his pants (functional encopresis); was involved in a juvenile offense; claimed to have had incestuous relations with his sister, and that K.C. was jealous of Hass' friendship with his brother and held a grudge against him.
*136 After hearing argument on the motion, the trial judge entered an order directing that the requested records be delivered to him for in camera inspection. The balance of the relief sought was reserved. Thereafter the trial judge denied the motion in its entirety. In so doing, he stated that he had reviewed the records of both B.C. and K.C. from Bound Brook Public School and also the record of an evaluation of B.C. by the Richard Hall Mental Health Center. As to K.C., he concluded that there was no evidence at all justifying an examination by a psychiatrist. With respect to B.C. he continued:
While B.C.'s school records for [the] 85-86 term revealed that he is not a "top" student, his performance according to those records on the standardized testing was the same as that made by any typical student in the 9th grade at the start of the first month. I am well aware that B.C. was 15 years old when he was in the 8th grade and that children in that grade are usually about 13 years. However, this, in and of itself, is not a sufficient reason to order that B.C. be subjected to psychiatric or psychological testing.
Furthermore, I reviewed the records submitted by the Richard Hall Community Mental Health Center regarding B.C.B.C. was seen in the center on March 11, 1985. And though stating that B.C. appeared immature, the only indication of possible problems with B.C. was the functional encopresis. I am not sure whether this problem still exists or whether its origin is physical or mental. It too is an insufficient ground warranting the granting of the defendant's motion.
* * * * * * * *
The Supreme Court recently stated that in order to satisfy the substantial need criteria for psychiatric examination, "there must be a showing of some deviation from acceptable norms, such as an identifiable or clinical psychiatric or similar disorder, beyond the realm of those human conditions that ordinary experience would confirm as normal. Absent persuasive evidence of potential incompetence, mere allegations of a disorder or unusual condition bearing upon competence do not constitute sufficient showing to justify a psychiatric examination."
As noted previously, that evidence has not been produced. And it does not appear in any of the records examined by the courts.
Hass challenges these conclusions.
We agree with the trial judge that there was insufficient evidence produced by Hass or present in the records (which we have reviewed) to justify a psychiatric examination of K.C. We thus affirm his decision as to K.C. With respect to B.C. however, we must part company with the judge. He found, from the records, that B.C. suffered at the age of 15, *137 and possibly continues to suffer today, from functional encopresis. Functional encopresis is defined as
the persistence of fecal soiling ... This condition is usually evidence of serious psychopathology when its existence is unassociated with anatomical or physiological defect ...
* * * * * * * *
The majority with encopresis [over the age of three] will be found to be mentally retarded; others are brain damaged or psychotic.
* * * * * * * *
Encopresis is seldom encountered beyond puberty. [Kolb, Modern Clinical Psychiatry 729-730 (9th ed. 1977)]
In denying the motion with respect to B.C., the trial judge stated: "I am not sure whether this problem [functional encopresis] still exists or whether its origin is physical or mental." We think that the judge should have ascertained the status and origin of this problem with a view toward determining what, if any effect, it might have on B.C.'s competence as a witness. In our view, psychogenic functional encopresis in a 15 year old may well meet the criteria of State v. R.W. 104 N.J. 14 (1986) that there
be a showing of some deviation from acceptable norms, such as an identifiable or clinical psychiatric or similar disorder, beyond the realm of those human conditions that ordinary experience would confirm as normal.
* * * * * * * *
Consequently, there must be some persuasive evidential showing to establish such a need. Toward this end, the party requesting the testing must present evidence reasonably indicating something peculiar, unique, or abnormal about the young witness that would influence the witness's competence ... [at 22]
We thus reverse the trial judge's denial of the motion with respect to B.C. and remand the matter to him to ascertain the details of B.C.'s functional encopresis including its present status; whether its genesis is physical or mental, and, if physical causes are eliminated, to entertain the expert evidence proffered by Hass as to whether and how psychogenic functional encopresis could impact on B.C.'s competence as a witness. At the end of such inquiry, which may require a court examination of B.C. and a plenary hearing, or prior thereto if the evidence warrants it, the trial judge should again address Hass' *138 motion for a complete review of B.C.'s school records and for a psychiatric evaluation of him.
Hass' second motion sought to dismiss counts one, two and four of the indictment for failure to allege specific dates for the crimes charged. In so doing, he relied on the decision of this court in State v. Interest of K.A.W., 207 N.J. Super. 19 (App. Div. 1986) in which we held that a 20 month period alleged in an indictment was too inexact to allow a defendant to prepare a defense to charges of sexual assault against a young child. The trial judge denied this motion. He stated:
Most recently the Appellate Division dismissed a complaint which gave a 20 month time frame for the commission of sexual offenses by a juvenile defendant. State in the Interest of K.A.W. in 207 New Jersey Super page 19.
In K.A.W. the court held that a 20 month time frame was too inexact to permit the juvenile defendant to adequately prepare a defense. The court, however, sustained the general rule that time is not an essential element of an alleged sexual assault. But it found that the interests of protecting the rights of the juvenile offender outweighed the general rule and thus the complaint was dismissed due to insufficiency.
The New Jersey Supreme Court recently heard oral argument on this case and the court's decision has not yet been released. The essential inquiry in balancing the rights of the State and that of the defendant is whether or not the defendant has adequate notice from the complaint or the indictment in this case. The acts charged against defendant occurred over a time period of approximately four and a half to five months. Under the decision of our court, I find that the indictment against the defendant is sufficient and the period alleged is not too inexact to permit the defendant to adequately prepare for a defense. Accordingly, the motion to dismiss the indictment is denied.
In State in Interest of K.A.W., 104 N.J. 112 (1986) the Supreme Court reversed the Appellate Division and remanded the matter to the trial court. In its opinion, the court set forth the approach to be adopted in addressing this kind of an issue:
[B]alanced against the need to vindicate the State's interest in the vigorous prosecution of child molesters is the accused's interest in receiving sufficiently adequate notice of the offense to permit him to prepare a defense. [Id. at 119]
Thus, the central issue is whether, in light of the facts in the particular case (e.g. the age of the victim, the number of offenses and the time period involved), the defendant has received "fair notice" of the charges against him.
In making such a determination, the Supreme Court stated that a trial judge must engage "in a most delicate exercise" by *139 weighing the individual facts of the case. Id. at 121. Recognizing that "fixed, precise standards" are useless to such a fact-sensitive determination the court, citing People v. Morris, 61 N.Y.2d 290, 296, 473 N.Y.S.2d 769, 773, 461 N.E.2d 1256, 1260 (1984), enunciated the following general criteria for application:
factors to be considered might include but should not be limited to the length of the alleged period of time in relation to the number of individual criminal acts alleged; the passage of time between the alleged period for the crime and defendant's arrest; the duration between the date of the indictment and the alleged offense; and the ability of the victim or complaining witness to particularize the date and time of the alleged transaction or offense. [K.A.W., supra, 104 N.J. at 122]
The Supreme Court added these additional considerations: "the age and intelligence of the victim, the extent and thoroughness of the prosecutor's investigative efforts to narrow the time frame of the alleged offense, and whether there was a continuous course of conduct." K.A.W., supra, 104 N.J. at 122. The court noted that the "weight to be accorded the factors will vary according to the circumstances of [each] case" and that the central goal "is to narrow the time frame of the occurrence as complained of ..." Ibid. In concluding, the Supreme Court stated that "[w]hen the trial court is satisfied that these sources of information have been exhausted, it will then be in a position to strike the necessary balance to determine whether fair notice has been given." Id. at 123.
The trial judge was unable to utilize these criteria in this case because it was decided shortly before the decision of the Supreme Court was published. The issue in this case is a particularly difficult one because the time frame in the indictment is much shorter than that considered in K.A.W. and the victims, while minors, are not of such a young age as to be entitled to the same deference as would be accorded to children of "tender years." Thus, the weights will be in a much closer balance than that presented in K.A.W. We therefore have concluded that the trial judge should have the benefit of the Supreme Court's reasoning in K.A.W. in striking this delicate *140 balance. Accordingly, we reverse his decision denying Hass' motion to dismiss certain counts of the indictment and remand the matter to the trial judge for reconsideration in light of the principles enunciated in K.A.W.
Affirmed in part; reversed and remanded in part.