589 A.2d 1353

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. D.R.H.,
DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 15, 1990—Decided December 20, 1990.

2

Before Judges DREIER and ASHBEY.

*Timothy Van Hise*, Assistant Prosecutor, argued the cause for appellant (*Nicholas L. Bissell, Jr.*, Somerset County Prosecutor, attorney; *Timothy Van Hise*, on the letter brief).

*Thomas A. Pavics* argued the cause for respondent (*Schachter, Cohn, Trombadore & Offen*, attorneys; *Thomas A. Pavics*, on the brief).

The opinion of the court was delivered by

ASHBEY, J.A.D.

Defendant D.R.H. was indicted and charged with two counts of aggravated sexual assault on the ten year old daughter of his girlfriend. His motion for a physical examination of the child was granted, the State moved for leave to appeal, and the matter was remanded for a hearing. A new order was entered, affirming his right to a physical examination of the child by a female doctor of his choosing. The order also provided that should she refuse to submit to such examination, the indictment

would be dismissed "unless the State shall offer new and not previously known evidence." When the child refused to go to the doctor, the indictment was dismissed.

The facts are not disputed. Ten-year old K.V.'s father, her custodial parent, reported to the authorities that K.V. had told him and his wife that while she was visiting her mother, his ex-wife, defendant had fondled her breasts and had inserted his fingers into her vagina. On May 11, 1989, K.V. was interviewed by detectives from the Somerset County Prosecutor's office. There she said that on two occasions between Halloween and Thanksgiving 1988 defendant placed his hand beneath her underpants and penetrated her vagina with his finger. On one occasion he also touched her breasts. She said he told her not to tell anyone about these incidents.

Following this interview, K.V. was taken, apparently at the prosecutor's direction, to a Dr. Joseph Smith, who reported that K.V. was

a very pleasant, intelligent young white female in no acute distress, however she was visibly sobbing at times and saddened. General physical exam is entirely within normal limits. There was noted on the skin no abnormal scratches or scars. There was no trauma noted to the breast area. The patient is prepubescent female with very early breast budding. The vaginal exam reveals there to be no obvious scarring around the labia or externally over the mons pubis. The hymenal ring does appear to be broken with a vertical measurement of 1 cm. and a horizontal measurement of 7 mm. for the opening. There was no abnormal discharge noted. The rest of the pelvic gynecologic exam appeared to be normal. There was no evidence of any problems in the anus area or the rectal area.

MY IMPRESSION IS THAT THE ALLEGED PENETRATION ON TWO OCCASIONS BY THE FINGER OF THE PERPETRATOR WOULD BE CONSISTENT WITH THE EXAMINATION WHICH WAS JUST DONE AND THEREFORE THE HISTORY GIVEN BY THE CHILD, K.V., IS CONSISTENT WITH THE PHYSICAL EXAM.

Defendant was indicted and, on July 11, 1989, K.V. wrote and signed a note saying, "Nothing happened, I just wanted to protect my Mom." Defendant moved to have K.V. examined by a physician chosen by him. On September 19, 1989, the judge received a note from the child.

Dear Judge, I'm not going to be examined again. They already put me through enough. Why would I have to be examined if nothing happened to me. I don't understand why they don't just drop this. I don't know any one my age who has been put through as much as me. I'm never going to see another doctor or psychologist again.

After a remand, the judge received another letter.

Dear Judge Imbriani, I thank you for your letter. I just wanted to write you again to let you know that I can't understand why you still didn't drop the charges. Because of all this stupid charges I can't even see my mom, even when nothing happened to me. If it will help you understand better I'll talk to you in person. I just don't want to see Rick go to jail for something he didn't do. Sincerely—

On December 7, 1989, following remand, the judge took testimony from K.V. The following colloquy occurred:

VAN HISE [Prosecutor]: ... What's your understanding of why you are here?
K.V: To tell everyone that I don't want a physical examination.

\*  \*  \*  \*  \*  \*  \*  \*

THE COURT: [Do you understand the subject here is a] criminal offense [which was] allegedly committed upon you. Do you realize that?
K.V.: No, because nothing happened to me.
THE COURT: ... Does it make a difference to you who wants the physical examination, who has asked the Court to order you?
K.V: No.

On appeal from the indictment's dismissal, the State urges that if the judge's order is affirmed, physical examinations of children allegedly assaulted by family members will become commonplace, leading family members to apply pressure to the child to stop cooperating. Defendant responds, and the judge noted, that a plaintiff in a personal injury action may be ordered to submit to a physical examination by a medical or other expert for the defense, and criminal defendants should have as great a right. *See, e.g. Duprey v. Wager*, 186 *N.J.Super.* 81, 89, 451 *A.*2d 416 (Law Div.1982), where the Law Division said,

Where it was shown that a plaintiff has submitted to an examination by two physicians of her own choosing, her objections that to submit to an examination on the application of the adversary would offend her modesty and feminine sensibilities did not prevail. (citations omitted).

*Duprey v. Wager*, 186 *N.J.Super.* 81, 89, 451 *A.*2d 416 (Law Div.1982).

At issue is a heart-rending example of the conflict between the privacy rights of sexual assault victims and the right of a defendant to a fair trial. The parties concede that there is no New Jersey authority exactly on point. The State relies on *State v. R.W.*, 104 *N.J.* 14, 514 *A.*2d 1287 (1986), in which the Supreme Court said defendant was not entitled to a psychological examination of the child-victim of sexual assault except where there was "substantial need," saying,

> However, the exercise of this power is neither frequent nor common, and never lightly undertaken. It is an unusual situation that impels the grant of a psychiatric examination as a precondition to a determination of competence. The practice of granting psychiatric examination of witnesses "must be engaged in with great care" and "only upon a substantial showing of need and justification."

*Id.* at 21, 514 *A.*2d 1287 (citations omitted).[1] That ruling accords with the general rule that limits criminal discovery provided to a defendant. *See R.* 3:13-2.

In addition to these limitations, there is a specific protection granted to victims of sexual assault, precluding certain evidence and, therefore, precluding discovery related to such evidence. The Rape Shield Law, *N.J.S.A.* 2C:14-7, provides:

> [E]vidence of the victim's previous sexual conduct shall not be admitted nor reference made to it in the presence of the jury ... [unless defendant] apply for an order of the court ... [and] the court finds that the evidence offered by the defendant regarding the sexual conduct of the victim is relevant and that the probative value of the evidence offered is not outweighed by its collateral nature or by the probability that its admission will create undue prejudice, confusion of the issue, or unwarranted invasion of the privacy of the victim.

*N.J.S.A.* 2C:14-7(a).[2]

The Supreme Court has also said,

---

[1]*But see State v. Hass*, 218 *N.J.Super.* 133, 137, 526 *A.*2d 1156 (App.Div.1987), in which a prior history of psychological imbalance evidenced by encopresis was held to be sufficient to establish such a need.

[2]In the recent case of *State v. Budis*, 243 *N.J.Super.* 498, 509–513, 580 *A.*2d 283 (App.Div.1990), however, we reversed the trial court's ruling that testimony concerning prior sexual abuse of the alleged victim was inadmissible where the source of the victim's knowledge of sexual conduct was an important defense issue.

[w]e have no doubt that a Court has the inherent power to order discovery when justice so requires. This inherent power was used in *State v. Butler,* 27 *N.J.* 560, 601 [143 *A.*2d 530] (1958), to compel a witness to submit to a psychiatric examination by the defendant's expert, in *State v. Moffa,* 36 *N.J.* 219, 222 [176 *A.*2d 1] (1961), to entitle a defendant to inspect a witness's grand jury testimony, and in *State v. Cook,* 43 *N.J.* 560, 563 [206 *A.*2d 359] (1965), to permit the defendant to examine the State's medical reports of its experts. *See also State v. Murphy,* 36 *N.J.* 172, 180 [175 *A.*2d 622] (1961); *State v. Hunt,* 25 *N.J.* 514, 524 [138 *A.*2d 1] (1958); *State v. Winne,* 27 *N.J.Super.* 304, 310 [99 *A.*2d 368] (App.Div.1953), certif. den. 13 *N.J.* 527 [100 *A.*2d 567] (1953).

Whether discovery should be expanded involves exercising judicial discretion or, put another way, balancing the beneficial effects of discovery against its disadvantages.

*In re W.C.,* 85 *N.J.* 218, 221, 222, 224, 426 *A.*2d 50 (1981).

In *W.C.* defendant moved to compel the prosecutor to arrange a pre-trial lineup. In an effort to balance the rights of the defendant and the burden to the State's witnesses, the Court presented the following guidelines to aid the court:

1. Identification must be a substantial material issue.

2. There must be a reasonable likelihood that a lineup would be of some probative value.

3. The defendant's motion should be made as soon after arrest or arraignment as practicable.[3]

*Id.* at 226–227, 426 *A.*2d 50. The Court also observed that, where the victim is burdened, nothing should be done which "could tend to discourage cooperation by many who are already reluctant to become involved in criminal proceedings." *Id.* at 225, 426 *A.*2d 50.

While there is no precedent in New Jersey, the precise issue of compelling the physical examination of a child in sexual assault cases has been considered elsewhere. In *North Carolina v. Hewett,* 93 *N.C.App.* 1, 8, 376 *S.E.*2d 467, 472 (N.C. App.1989), the North Carolina Court of Appeals refused to permit defendant to have his own expert physically examine his two children whom he allegedly sexually assaulted when they

---

[3]In the instant case, the passage of time is also an issue. However, Hunt's motion was filed in a timely manner and any delay is the result of the appeal process.

were eight and nine years old.  The court relied on the fact that the last incident of alleged abuse had been some six months earlier than defendant's proposed new examination, and he failed to proffer an expert opinion that the State's physical examination results were inconsistent or indicated a need to conduct additional examinations.  376 *S.E.*2d at 472.  The court, however, left open the possibility of defendant again moving for the examination, saying,

> When, in a case such as this one, four life sentences are in part contingent on a distance of four millimeters [distance in hymenal ring reported by the State's expert], a defendant should not be absolutely foreclosed from having his own expert examine the alleged victim.

*Ibid.*

In the case of *Turner v. Commonwealth of Kentucky*, 767 *S.W.*2d 557, 559 (1989), *cert. denied* —— *U.S.* ——, 110 *S.Ct.* 260, 107 *L.Ed.*2d 209 (1989), the Kentucky Supreme Court held that, "as a matter of due process and fairness," defendant was entitled to have a four year old alleged rape victim examined by an independent gynecologist in preparation for trial to determine if penetration had occurred, saying

> In some cases the physical condition of an alleged victim may, in itself, negate the fact that a particular crime has been committed.

*Ibid.*

In *State v. Ramos*, 553 *A.*2d 1059, 1062 (R.I.1989), the Rhode Island Supreme Court held that the trial court had discretionary power to require an adolescent sexual assault witness in a criminal trial to submit to an independent physical exam where defendant showed substantial need and justification, so long as there was no violation of substantial rights.  The court directed that, in weighing whether there was a violation of the victim's rights, the trial court should consider the victim's age, remoteness in time of the incident, degree of intrusiveness and humiliation, potentially debilitating physical effects and any other relevant considerations.  The Court held that where four years had passed since the incident, and the witness's testimony was sufficient to prove the penetration element of the crime, no

medical testimony was necessary and no physical examination could be compelled.

■■ Balancing the rights of victim and defendant in this case, *see State v. R.W.*, 104 *N.J.* at 21, 514 *A.*2d 1287, we conclude that, while compelling a sexual assault complainant to undergo more than one physical examination is not justified in most cases, there are circumstances where defendant's basic rights require it. In this case, the State sought to prove an essential element of a first degree crime, penetration, by a medical examination only, the child having repudiated her earlier accusation. The record indicates that the State's examination was hastily done, resulting in a crucial expert opinion assertedly by a non-specialist. We consider those circumstances demonstrated defendant's need to test whether the first examination was in error. Moreover, the judge did not compel the examination. The child's rights as expressed and found by the court were quite clearly protected by the court's order.

We recognize that such a result may encourage family members to apply pressure to youthful victims. That risk, unfortunately, exists in every family sexual assault case, even when there are no required physical examinations. We are persuaded that, where special circumstances make it necessary to protect defendant's rights, acceding to defendant's request to have the victim physically examined does not make that risk materially greater.

Affirmed.