# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3012-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

VICTOR A. RODRIGUEZ,

     Defendant-Appellant.

_____

> Argued November 9, 2021 – Decided February 15, 2022
>
> Before Judges Mawla and Mitterhoff.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 17-06-0706.
>
> Jason Goldman argued the cause for appellant (Law Offices of Jeffrey Lichtman, attorneys; Jason Goldman, on the brief).
>
> Patrick F. Galdieri, II, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Patrick F. Galdieri, II, of counsel and on the brief).

PER CURIAM

Defendant Victor A. Rodriguez appeals from a January 8, 2020 judgment of conviction entered after a jury found him guilty, following a six-day trial of second-degree sexual assault, third-degree child endangerment, and fourth-degree criminal sexual contact. We affirm.

We discern the following facts from the trial record. S.M. was born in October 2002. She was thirteen years old when she began communicating with defendant, who was twenty-four at the time. S.M. began conversing with defendant via Facebook Messenger during the late summer and early fall of 2016. Their conversations soon turned sexual, and they exchanged nude photographs of themselves.

They allegedly met for the first time in early September 2016. S.M. testified that defendant, unsolicited, sent taxi cabs to her home late at night to bring her to his apartment on at least five occasions, which she initially refused. Eventually, she accepted the offer and took a taxi to defendant's home in New Brunswick.

Defendant, who uses a wheelchair,[1] was waiting for her downstairs when she arrived. She helped him get upstairs to his bedroom, where he left her while

_____

[1] Defendant is physically handicapped from injuries suffered in 2012 such that he is unable to walk without assistance.

A-3012-19

he got them both beverages. He returned and they began talking. S.M. testified that the next thing she remembered after consuming the beverage was waking up naked in defendant's bedroom at approximately 7:00 a.m. She returned home in a taxi. Defendant later went to S.M.'s home and gave her Plan B.[2] S.M. testified that she stopped answering his messages shortly thereafter.

S.M. began communicating with defendant again after she returned to school. On October 3, 2016, defendant sent S.M. the following message:

> Thanks for fucking up my life. I had to leave town, and delete all my social media and everything because your parent[s] called me, telling me they were going to report me to [the] police department for child pornography for talking to a [thirteen]-year-old. Just leave me alone. I don't want nothing with you. You had your chance and you lie your whole life. Just [to] get with me. Thanks you I lear[ned] my lesson.

S.M. responded by telling him that she was seventeen years old, not thirteen. At defendant's request, she sent him a photograph of her birth certificate as proof. S.M. testified that she sent the messages to appease defendant out of fear for her safety.

---

[2] Plan B One-Step is a brand name for the generic drug levonorgestrel. It is emergency contraception commonly referred to as the morning after pill.

A-3012-19

In the early morning of October 23, 2016, S.M. returned to defendant's home in a taxi he sent to her house. S.M. witnessed defendant take one Xanax for his pain and "finish[] off . . . the butt of . . . weed." Defendant initially scolded her for "ruin[ing] his life" but eventually began to make sexual advances. Defendant removed her pants and underwear, put a condom on, and began having vaginal intercourse with S.M., mounting her from behind. Defendant eventually removed the condom then continued to have intercourse. He ejaculated on S.M.'s lower back. His semen dripped onto her shirt.

The next day, S.M.'s mother, A.V., tried to question S.M. about her whereabouts the previous night. After speaking with S.M., A.V. called the police.[3] Officer Brian Quigley of the Franklin Police Department arrived shortly thereafter. Quigley spoke to S.M.'s father, R.M., who indicated his daughter had been sexually assaulted in New Brunswick the previous night. Quigley advised his dispatcher of the incident, and officers from the New Brunswick Police Department were sent to the address. An officer took statements from S.M. and her parents, and collected the shirt, shoes and underwear that S.M. had worn the previous night, as well as two surveillance camera photographs. The items were

---

[3] A.V. had called the police earlier that day. The officer who responded spoke to S.M., and then left without taking further action.

A-3012-19

marked and placed into the evidence locker at the New Brunswick Police Station.

S.M. and her parents were taken to the New Brunswick Police Department for an interview. At the station, S.M. was medically examined, which revealed signs of recent intercourse. After the State later obtained defendant's buccal swab, analysis revealed that the sample matched the DNA of the semen found on S.M.'s clothes.

On October 24, 2016, S.M. was re-interviewed, this time by detectives from the Middlesex County Prosecutor's office. S.M. cooperated during the interview but did not reveal any information about the September incident. Detectives obtained consent to search S.M.'s phone, which revealed communications with defendant via Facebook Messenger.

Detectives also obtained consent to conduct a consensual intercept of S.M.'s communications with defendant, which took place later that day. While detectives observed, S.M. responded to message defendant sent on Facebook Messenger. Defendant inquired as to whether she needed Plan B. He indicated that he could not recall if he ejaculated inside of her. Defendant asked if S.M. could use a phone to call him. While speaking on the phone, S.M. told him she did not know where he ejaculated because that was the first time she had

intercourse. Defendant responded: "Your first time? First time on what? . . . . First time I'm fucking you? . . . . That's not the first time I fucked you." Defendant also made several other incriminating statements.

On June 9, 2017, a Middlesex County grand jury returned a multi-count indictment against defendant, charging him with second-degree sexual assault of a victim between the ages of thirteen and sixteen when the actor was four or more years older than the victim, N.J.S.A. 2C:14-2(c)(4) (count one); third-degree endangering, abuse, neglect, or sexual act by a non-caretaker, N.J.S.A. 2C:24-4(a)(1) (count two); and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b) (count three). The indictment was based on allegations stemming "on or between September 3, 2016 and October 23, 2016."

On August 5, 2019, defense counsel filed a motion to correct the indictment by striking all reference to the September 3, 2016 incident and excluding all reference to the incident at trial. A hearing was conducted the following day, at which defense counsel argued that the State was attempting "to combine two alleged incidents in one count" of the indictment. Defense counsel contended that, if the jury finds defendant guilty, it would be unclear which incident was the basis for the verdict. In denying defendant's request, the judge determined:

There [was] . . . evidence presented to the grand jury . . . that there were two separate incidents that occurred on two separate dates. Based on what was presented, . . . there's prima facie evidence based on inferences that could be drawn that . . . defendant sexually assaulted the victim on September 3rd, and he also assaulted her on October 23rd. Those are two separate incidents.

Although they are separate incidents . . . there's nothing in the case law that I'm aware of or that's been brought to my attention . . . when you're dealing with child victims . . . that requires that the State allege . . . separate dates and separate incidents for each assault.

On August 7, 2019, defendant filed a motion to dismiss the indictment, which was virtually identical to the previous motion filed. At oral argument, defendant did not challenge the sufficiency of the evidence, just the impropriety of "the indictment . . . charging two separate counts . . . . in count." In denying the request, the judge determined that there was not any rule or case that "prevents the [p]rosecutor from proceeding in that fashion. I guess the [p]rosecutor could have decided to charge each event separately. They didn't. I don't think it necessarily makes the indictment defective." Defendant filed an application for permission to file an emergent motion, which was denied.

At trial, the State presented testimony from various witnesses including: Officer Brian Quigley of the Franklin Township Police Department; Officer Nicole Lewis of the New Brunswick Police Department; Detective William

Coleman of the New Brunswick Police Department; A.V.; R.M.; S.M.; Detective Deon McCall of the Middlesex County Prosecutor's Office; Eileen Aiossa, the Forensic Nurse Examiner Coordinator of the Middlesex County Prosecutor's Office; Allison Lane, a forensic scientist with the New Jersey State Police; Linnea Schiffner, a forensic expert with the New Jersey State Police; and Officer Felix De La Cruz, a supervisor in the Special Victim's Unit of the Middlesex County Prosecutor's Office. Additionally, a recording of the intercept was played at trial. Following the State's case-in-chief, defendant moved for a judgment of acquittal, which was denied.

At trial, defendant admitted that S.M. came to his house in September 2016, but denied engaging in any sexual conduct, sending the taxis, or bringing her Plan B afterwards. After speaking to S.M.'s mother, defendant sent the October 3, 2016 message and stopped trying to contact S.M. S.M. subsequently contacted him, indicated that she was actually seventeen, and sent a picture of her birth certificate.

Defendant believed S.M. came to his home on October 23, 2016, to discuss the situation regarding her age and her mother. He had taken his

medication[4] that night.  Defendant "passed out" at around 4:30 a.m., and the next thing he remembered was having a sexual dream.  Around the time he ejaculated, defendant allegedly woke up to find S.M. having sex with him.  He pushed her off of him, asked her what had happened, and told her to leave.  Defendant alleged that due to his injuries, he is only able to have sex while lying flat on his back.

During the charge conference, defense counsel raised concerns that, because the indictment alleged two separate instances in one count, that the jury could return a guilty verdict without unanimity.  The judge created a special verdict sheet that separated each count of the indictment based on these incidents and instructed the jury that the verdict must be unanimous.

Following the closing of evidence, summations, and the jury instructions, the jury returned a question:  "How was [S.M.'s] age and birthdate . . . verified?  Doubt arises due to testimony about a false birth certificate, conflicting accounts of S.M.'s age at the time of [the] incident, mother, brother, victim, [and] defendant."  The judge instructed the jury that "you are to decide this matter based only on the evidence presented.  It's your function to determine [S.M.'s]

---

[4]  The medication was prescribed to treat pain and depression associated with injuries defendant sustained in 2012.

age at the time of the alleged crime. Both [S.M.] and her mother testified about her birthdate and her age. It's your function to determine a witness's credibility." Based upon this "one-sided" instruction, as well as the alleged deficiencies in the indictment, defense counsel requested a mistrial. The judge denied the motion.

The jury ultimately acquitted defendant of all counts as to the September 3, 2016 incident but found him guilty of all counts as to the October 23, 2016 incident. The verdict sheet reflects that each count of the indictment was premised on both incidents.

At the sentencing hearing on December 16, 2019, the judge noted that there was a presumption of imprisonment because count one was a second-degree crime. He merged counts two and three with count one. As to count one, the judge sentenced defendant to a seven-year term of imprisonment subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.[5] He also required that defendant comply with the reporting and notification requirements of Megan's Law, N.J.S.A. 2C:7-1 to -23. On January 7, 2020, the judge further ordered that he provide a DNA sample, imposed a sex offender restraining order, and parole

_____

[5] On January 7, 2020, defendant appeared again before the sentencing judge who removed the imposed NERA conditions because it was not a crime subject to NERA.

supervision for life. A judgment of conviction was issued the following day. This appeal ensued.

On appeal, defendant raises the following issues for our consideration:

POINT I

THE JURY'S VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.

. . . .

POINT II

THE COURT EXCEEDED ITS AUTHORITY AND VIOLATED [DEFENDANT'S] CONSTITUTIONAL RIGHTS BY AMENDING THE INDICTMENT AT TRIAL.

. . . .

As a preliminary matter, defendant's argument that the verdict was against the weight of the evidence is procedurally barred. Rule 2:10-1 states explicitly that "the issue of whether a jury verdict was against the weight of the evidence shall not be cognizable on appeal unless a motion for a new trial on that ground was made in the trial court." (emphasis added); see also State v. Reininger, 430 N.J. Super. 517, 538 (App. Div. 2013) (noting that a defendant's argument that there was insufficient evidence to support a conviction was "procedurally barred because [the] defendant failed to move for a new trial based on that ground as

required by Rule 2:10-1."). Defendant never moved for a new trial; therefore, he cannot now argue the verdict was against his weight of the evidence.

Defendant's argument that the trial judge improperly amended the indictment at trial by adding three new charges to the verdict sheet, thereby impairing his ability to defend the case, is utterly without merit. "It is axiomatic that an indictment 'must charge the defendant with the commission of a crime in reasonably understandable language setting forth all . . . critical facts and . . . essential elements' of the alleged offenses so as to enable defendant to prepare a defense." State v. Salter, 425 N.J. Super. 504, 514 (App. Div. 2012) (quoting State v. Wein, 80 N.J. 491, 497 (1979)). Nonetheless, "when an indictment charges a sexual crime against 'a young victim[,] [it] will not have to be as exacting when specifying dates of abuse.'" Ibid. (alterations in original) (quoting State v. C.H., 264 N.J. Super. 112, 125 (App. Div. 1993)). "Thus, the central issue is whether, in light of the facts in the particular case (e.g., the age of the victim, the number of offenses and the time period involved), the defendant has received 'fair notice' of the charges against him." State v. Hass, 218 N.J. Super. 133, 138 (App. Div. 1987); see R. 3:7-3(a).

Here, defendant clearly had fair notice. The indictment charged defendant with three total counts. The three-count indictment indisputably was premised

12

on both the September and October incidents. The judge charged the jury consistent with what defendant already knew, which was that each of the three counts in the indictment involved two incidents. The dates of the incidents were known. That he understood the charges against him is evident by his repeated attempts to declare the indictment deficient and/or strike all reference to the September incident at trial.

Contrary to defendant's argument, the judge did not amend the indictment. The judge did not add three new charges. Rather, for the purposes of unanimity, the judge separated the two incidents underlying the indictment with the special interrogatories on the verdict sheet to ensure defendant could only be found guilty if the jury unanimously voted to convict. If the jury concluded defendant was guilty of both incidents, he would have been sentenced for convictions based on three counts, not six. Thus, the judge did not "charge another or different offense from that alleged" in each of the three counts of the indictment. R. 3:7-4.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13